724 So.2d 1210 (1998)
William H. EVANS, Appellant,
v.
Andrea M. PIOTRACZK, Appellee.
No. 97-3464.
District Court of Appeal of Florida, Fifth District.
December 11, 1998.
*1211 Richard H. Ford and Michael R. D'Lugo, of Wicker, Smith, Tutan, O'Hara, McCoy, Graham, & Ford, P.A., Orlando, for Appellant William H. Evans.
W. Marvin Hardy, III, and David B. Falstad, of Gurney & Handley, P.A., Orlando, for Appellee.
HARRIS, Judge.
After several months of litigation during which discovery was conducted, the defendant in a construction defect law suit brought in new attorneys. Shortly after being retained, the new attorneys filed a request for a continuance as well as an offer of judgment in the amount of $100. Ultimately the action went to trial and a defense verdict was entered which was sustained by this court. The defendant below then sought attorneys' fees based on his offer of judgment. The trial court rejected the claim for fees on the basis that the offer was not made in "good faith" under "the rationale of this Eagleman case." Because the court relied on an incorrect interpretation of Eagleman v. Eagleman, 673 So.2d 946 (Fla. 4th DCA 1996), we reverse for further consideration.
Even though the court in Eagleman sustained a denial of attorneys' fees based on a $100 offer, it did not hold that the amount of the offer in that case, in and of itself, justified a finding of bad faith. The court stated that an offer of judgment need not equate with the total amount of damages that might be at issue; the question to be considered by the court in determining good or bad faith is whether the offer bears a reasonable relationship to the amount of damages suffered and a realistic assessment of liability. In our case, the new attorneys represented that before they agreed to take the case, they talked to the previous lawyers, the insurer, and the prospective client and became familiar with the potential damages (which they set at $3,000) and the risk of liability (which they set at 5%) and decided on the offer of $100.
Eagleman suggests that the approach taken in this case was the appropriate one in determining what a good faith offer should be. In response to this argument in favor of the award of attorneys' fees, the court stated:
[Based on the Eagleman case] the court obviously has discretion in this matter. And I'd just as soon not even try and weigh those factors that Mr. DeLugo pointed out about ten thousand dollars and the three thousand dollar difference between the thirteen thousand dollars and the three to five percent of that. I just don't think that the hundred dollar offer at the time it was made and the circumstances it was made was in good faith.[1]
The trial judge apparently reads Eagleman as giving him unbridled discretion to find that a minimal offer is made in bad faith. Instead Eagleman recognizes that depending on the circumstances of a particular case, a minimal offer might well be justified and thus the court must look to the relative amount of potential damage and factor in the risk of liability in determining whether the offer is in good faith. The court in this case simply, and as a matter of record, refused to do so. It is suggested that perhaps the *1212 judge didn't believe that the lawyers went through the analysis as represented by them. But there is no indication in the record that he refused to consider their argument on that basis. If that is his basis, he should so state when he reconsiders this issue on remand.
REVERSED and REMANDED.
DAUKSCH, J., concurs.
W. SHARP, J., dissents, with opinion.
W. SHARP, Judge, dissenting.
I would affirm this case. Section 768.79(a) provides that a trial judge may, in his or her discretion, determine that an offer of judgment was not made in good faith and in such a case, it may disallow an award of costs and attorney's fees:
If a party is entitled to costs and attorney fees pursuant to the provisions of this section (having made an offer of judgment or demand for judgment pursuant to the statute), the court may, in its discretion, determine that an offer was not made in good faith. In such case the court may disallow an award of costs and attorney fees.
§ 768.79(a), Fla. Stat. (1997).
There is no statutory requirement that the court state specific findings to justify its exercise of discretion. The issuesgood faith or not; whether to award or notare expressly addressed to the trial court's exercise of discretion. If the record supports the trial court's denial of fees, as in my view the record does in this case, we as an appellate court should affirm. See Marcoux v. Marcoux, 464 So.2d 542 (Fla.1985); Cooley v. Certified Grocers of Florida, 629 So.2d 273 (Fla. 1st DCA 1993).
The trial judge stated at the hearing in the fee matter that he recalled this case and its past history. At that hearing, D'Lugo, the attorney representing the defendant, presented no record evidence or testimony. Hardy, the attorney representing the plaintiff, presented billing records and affidavits. Both made arguments to the court, which were in opposition. Neither testified under oath.
D'Lugo stated that his firm received the case file at the end of 1996, after the matter had been in litigation for two years, and the client, Evans, had been a party for at least one year. Extensive discovery had been taken. He argued his firm was able to make its evaluation of the value of the case based on what Evans' prior attorney, whom his firm had replaced, was able to tell them, plus their evaluation of the file which they initially received.
He explained to the court that they thought the plaintiff's (Piotraczek) highest potential recovery was $13,000.00. There had been a $10,000.00 payment to her, which would be a set-off against those damages. Thus, they calculated that the best case scenario for Piotraczek was a recovery of $3,000.00 from his client, Evans. He then explained that Evans had a potential defense that Piotraczek failed to mitigate her damages and he had done no wrong. Thus, at the highest, they estimated a three percent or five percent liability against Evans. Five percent of $3,000 was $150.00. This explained his firm's offer of $100.00 as having been made in good faith.
Hardy, opposing counsel, pointed out that although his firm had requested production of D'Lugo's firm's time records in order to determine how much time was spent evaluating the case prior to making the $100.00 offer of judgment, and to enable them to possibly take depositions, he received few records, and too late. In any event, Hardy pointed out that based on the records in the case (in fact, the only record evidence in this case), the first time records for D'Lugo's firm concern only the firm substituting itself as counsel of record and obtaining a continuance. Three days after becoming attorneys of record, the time record shows .30 hours were spent drafting an offer of judgment. There are no time records which indicate any review of the pleadings or the file, prior to D'Lugo's firm's filing the $100.00 offer of judgment.
The first time records for D'Lugo's firm reviewing the file or investigating the case appears nine days after the offer of judgment was made (January 15, 1997). Two weeks after that (February 14, 1997), time records indicate their first conversation with their client. Three weeks later (March 21, 1997) time records show the firm reviewed the *1213 deposition of the plaintiff, Piotraczk. Her deposition was not available (typed up) until after the time of the offer of judgment.
Hardy also pointed out that there was no indication that prior to the offer of judgment D'Lugo's firm reviewed the pleadings, did any research, or developed a theory for defense until April 21, 1997. Not until April 24, 1997 did the firm visit the alleged damaged house, which was the subject of the lawsuit, nor did they review the manufacturer's instructions for installing the siding on the house until April 28, 1997 (the alleged cause of the damage). The first time records for legal research were in May. Thus, Hardy concluded, D'Lugo's firm had no reasonable foundation to make the offer of judgment based on their research of the law. "There's no indication anywhere in the file they had any discussions with the previous lawyer about what they say is a careful evaluation of the case. No indication anywhere in the file they had any discussions with the insured (Evans). No indication that they ever reviewed the pleadings."
At the time the offer was made, Hardy argued, D'Lugo's firm was:
[O]ver here scrambling for a continuance on the eve of the trial on January 6th, cause we don't know anything about the case. That's their ground. No indication they've looked into the law. They make a one hundred dollar bad faith offer, which includes, Your Honor, costs.... There's no indication they looked into costs, damages or anything. So, this is awe say a bad faith they made a bad faith offer of judgment not based on anything except a knee jerk, sort of an early minimal offer of judgment that they said shouldyou should now base yourthisnow award them attorney's fees.
Mr. D'Lugo defended his firm's seeking of a continuance in January 9, 1997 after entering upon the representation of Evans. He said there was a difference between knowing enough about a case to try it, and to settle it.
Faced with opposite views of whether or not Mr. D'Lugo's firm had sufficient information about the case to make a good faith $100.00 offer of judgment on January 6, 1997, three days after the firm became counsel of record, the court had to make a fact finding. It did so. The trial judge said:
But it appears to me in this matter that this was not a good faith offer under the statute. I think there was a lot of scrambling, as Mr. Hardy said.
The court did say it declined to try to follow the mathematical explanation of how Mr. D'Lugo arrived at the $100.00 offer based on a $3,000 potential liability. That was primarily because the court concluded that even though the figures could be made to make rational sense retrospectively, it was not necessary.
I just don't think that the hundred dollar offer at the time it was made and the circumstances it was made was in good faith.
The court in T.G.I. Friday's, Inc. v. Dvorak, 663 So.2d 606 (Fla.1995) pointed out that pursuant to section 768.79(2)(a), a court may in its discretion disallow an award of attorney's fees, if it determines that an offer "was not made in good faith" or if the offeror's intentions were shown to be "not in good faith." In my view, that was done in this case by offering record evidence that the offering law firm had just embarked upon representing the defendant three days before the offer was made and that, at the time of the offer, it had not had sufficient time to evaluate the case. When the offer was made, the new firm was still "scrambling" to deal with the new file, as suggested by Hardy, and concurred in by the trial judge, who also was the trial judge at the time the new firm commenced its representation in this case.
In Eagleman v. Eagleman, 673 So.2d 946 (Fla. 4th DCA 1996), the court upheld a trial court's denial of attorney's fees because the trial court found the offer was not made in good faith. In that case, the trial court made detailed written and oral findings of fact after a hearing on the motion for attorney's fees. In this case, the trial court simply made a written finding the offer was not made in good faith, but the oral statements are more extensive. In any event, no written findings are required by the statute.
The essence of the holding in Eagleman was that the "nominal" offer of judgment ($100.00) had been made without a reasonable *1214 foundation upon which to realistically assess liability. Rather, it was based on the "subjective determination," before discovery had commenced that this was a case of no liability. That is what the trial court found lacking in this case.
Here there was evidence, both in the record and presented at the hearing, that the nominal $100.00 offer was made before the attorneys had time to have undertaken a sufficient review of the case to evaluate their new client's liability. In fact, the evidence indicated that they had not reviewed the case or the prior discovery. Nor had they done any research of the legal issues involved, to provide them with a reasonable foundation upon which to premise an offer. Three days is a very short time. And the trial court recalled their initial appearance in the case as "scrambling" to get a continuance.
There may have been sufficient material in the court file, including prior discovery, to provide the new firm with a sufficient rational basis upon which to premise a $100.00 offer. However, if they did not have time to look at it, their offer is just as subjective as one made without a rational basis. In both this case and in Eagleman, there was a sufficient basis to allow the court to conclude the offer "could have served no purpose other than to lay a predicate for subsequent award of attorney's fees as occurred here." Eagleman at 948. That fails to advance the purpose of the statute, to encourage settlement based on actual, clear-headed, analysis of the case. I would affirm.
NOTES
[1] The court did not bother to indicate what "circumstances" he believed justified a finding of bad faith.