722 So.2d 955 (1998)
Eliahu BEN-SHMUEL and Lior Ben-Shmuel, Appellants,
v.
WIMBISH-RITEWAY, INC., Appellee.
No. 98-566.
District Court of Appeal of Florida, Third District.
December 30, 1998.
Lynette Ebeoglu McGuinness of Buchanan Ingersoll Professional Corp., Miami, for appellants.
Charles M. Auslander of Charles M. Auslander, P.A., Coral Gables; Warren A. Trazenfeld of Warren A. Trazenfeld, P.A., Miami, for appellee.
Before SCHWARTZ, C.J., and NESBITT and COPE, JJ.
COPE, Judge.
Eliahu and Lior Ben-Shmuel appeal from a final summary judgment entered in favor of plaintiff-appellee Wimbish-Riteway, Inc.
*956 Eliahu Ben-Shmuel, as general partner of Mazel Tov Associates, entered into an exclusive listing agreement with Wimbish for the sale of a Golden Beach property.[1] The term of the agreement ran through May 1, 1996. Another broker, Linda Bird, learned of the listing through the multiple listing system. She showed the property to her clients, the Johnsons, on two occasions in April 1996. On both occasions, Ben-Shmuel was present. Wimbish, however, was not notified that the property had been shown. On June 9, 1996, after the termination of the Wimbish agreement, Ben-Shmuel entered into a new listing agreement with Linda Bird Realty. On June 21, the property was sold to the Johnsons for $2,500,000. Linda Bird Realty was paid a brokerage fee of $75,000.
Wimbish brought this action against the appellants, contending that it was entitled to the brokerage fee because the property was shown to the Johnsons during the term of its listing agreement with Ben-Shmuel. Wimbish moved for, and was granted, summary judgment.
On appeal, the appellants maintain that a genuine issue of material fact remains as to when the Johnsons were shown the property. We disagree. While we read the record in the appellant's favor, see, e.g., Moore v. Morris, 475 So.2d 666, 668 (Fla. 1985), we find no conflict between Linda Bird's deposition statement that the Johnsons were shown the property during the term of the Wimbish agreement and Ben-Shmuel's deposition statement that he could not remember when the property was shown to the Johnsons.
The appellants also contend that even if the Johnsons were shown the property during the term of the agreement, Wimbish is not entitled to the brokerage fee as a matter of law. Again, we disagree. The listing agreement provides, in pertinent part:
For finding a purchaser ready, willing and able to purchase the above property, the undersigned OWNER(S) jointly and severally agree(s) to pay WIMBISH RITEWAY REALTORS a brokerage fee of 6% of the sale price of the aforementioned property. Said fee is to be paid to WIMBISH-RITEWAY whether the purchaser is found by WIMBISH-RITEWAY, a Cooperating Broker without Subagency, a Coordinating Broker acting as Transaction Broker or a Buyer Broker, by the undersigned OWNER(S) or by any other person .... or if the OWNER(S) agree to sell, exchange or option said property within twelve months after the termination of this Authorization to a purchaser to whom WIMBISH-RITEWAY REALTORS® or any Cooperating Broker or Buyer Broker submitted said property for sale during continuance of said Authorization and was registered with OWNER(S), by WIMBISH-RITEWAY, through a prospect registration or contract presentation during the term of this authorization or within fifteen (15) business days thereafter.
....
IN CONSIDERATION OF THIS AUTHORIZATION TO SELL/LEASE, OWNER(S) AGREE(S):
1. To immediately refer to REALTOR® all inquiries relative to said property.
The property was sold to the Johnsons approximately fifty days after the expiration of the agreement, well within the twelve-month period provided for. The buyers' broker, Linda Bird, submitted the property for sale to the Johnsons during the term of the agreement. Under the terms of the contract, Wimbish is entitled to the brokerage fee.[2]
*957 Ben-Shmuel urges that a commission should be denied on authority of Whitehurst v. Erstling, 184 So.2d 233 (Fla. 3d DCA 1966). That case has no application here.
"[T]he broker's right to a commission is controlled, in the final analysis, by the provisions of the employment contract with the principal." 15 Richard R. Powell, Powell on Real Property § 84C.05[3], at 84C-74 (1998).
In some listing agreements, like the present one, the broker is hired to find a purchaser. See The Florida Bar, Florida Real Property Sales Transactions § 2.2 (2d ed. 1994); 7 Fla. Jur.2d Brokers §§ 70-73 (1997). See generally Leon Realty, Inc. v. Bradwell, 271 So.2d 771, 773-74 (Fla. 1st DCA 1972); Arthur R. Gaudio, Real Estate Brokerage Law §§ 71, 88-89 (1987). In other listing agreements, the broker is hired to effect a sale. See The Florida Bar, Florida Real Property Sales Transactions § 2.23; 7 Fla. Jur 2d Brokers § 73.
Ben-Schmuel relies on Whitehurst, but in that case (unlike the present one) the broker was employed under an exclusive right to sell. 184 So.2d at 234. Thus:
A broker employed to "sell" or "effect a sale" of property, as distinguished from a broker employed to find a purchaser, is not entitled to compensation until he effects a sale or procures from his customer a binding contract of purchase within the terms of his authority, except where consummation of the contract is prevented by the default of the broker's employer.
7 Fla. Jur.2d Brokers § 73, at 357 (footnotes omitted); see id. § 85 at 386-87 & nn. 26-27; Whitehurst, 184 So.2d at 234.
In the present case, by contrast, the listing agreement only required the broker to find a purchaser ready, willing, and able to buy the property.[3] The agreement spells out that the listing contract will be satisfied if such a buyer is located by a cooperating broker or buyer broker. Since the terms of the listing agreement were satisfied under the facts of the present case, the trial court correctly held that Wimbish was entitled to its commission.
Affirmed.
NOTES
[1] "In granting an exclusive listing the owner agrees to not list the property with any other broker during the term of the exclusive listing." The Florida Bar, Florida Real Property Sales Transactions § 2.12, at 2-10 (2d ed.1994).
[2] Ben-Shmuel did not, as required by the agreement, refer the Johnsons' inquiry to Wimbish. Had Ben-Shmuel done so, Wimbish would have been able to fulfill the condition precedent of registering the prospective purchasers. As the Florida Supreme Court has stated:

It is a general principle of law, that he who himself prevents the happening or performance of a condition precedent, upon which his liability, by the terms of the contract, is made to depend, cannot avail himself of his own wrong and relieve himself from his responsibility to the obligee, and shall not avail himself, to avoid his liability, of a nonperformance of such precedent condition, which he has himself occasioned, against the consent of the obligee.
Knowles v. Henderson, 156 Fla. 31, 35, 22 So.2d 384, 386 (1945) (citations omitted). Having failed to notify Wimbish that the property was being shown to the Johnsons, Ben-Shmuel prevented performance of a condition precedent. Thus, Ben-Shmuel cannot avail himself of this wrong to avoid his obligation to Wimbish.
[3] The judgment incorrectly describes the listing agreement as creating an exclusive right to sell. As the contract language makes clear, the listing agreement required the broker to find a buyer. See 7 Fla. Jur.2d Brokers §§ 73, 85.