732 So.2d 364 (1999)
EARNEST & STEWART, INC., Appellant,
v.
Armando CODINA, Margarita Codina, Eugene P. Conese and Anna May Conese, Appellees.
Nos. 98-794, 97-3190, 97-2947 and 97-2612.
District Court of Appeal of Florida, Third District.
February 10, 1999.
Rehearing Denied March 24, 1999.
*365 Stephen L. Raskin, for Earnest & Stewart, Inc.
Shubin & Bass and John K. Shubin and Jeffrey S. Bass for the Codinas
Wallace, Bauman, Legon, Fodiman & Shannon and Michael G. Shannon for the Coneses.
Before SCHWARTZ, C.J., and NESBITT and COPE, JJ.
SCHWARTZ, Chief Judge.
We uphold the decision below that a real estate broker had no viable claim in connection with a particular transaction but reverse the rejection of the defendants' application for attorney's fees under the offer of judgment statute for further consideration.

I.
Although the Codinas had an exclusive listing agreement for the sale of their home with Ross & Associatesunder which Ross in fact received a commission when the residence was later purchased by the Coneses[1] another broker, Earnest & Stewart, also claimed a commission in the transaction.[2] The trial judge granted summary judgment against it, in favor of both the Codinas and the purchasers, the Coneses, who E & S contended had tortiously interfered with its rights against the sellers. We affirm.
The sole basis of E & S's action and the only thing it did in connection with the sale of the property was to inform the Coneses, with whom its agent had had prior dealings, that the Codina property was for sale after he learned of that fact at a real estate brokers' meeting. The Coneses, however, rejected E & S's offers to show them the home or otherwise participate in a prospective purchase, because they were already acquainted with the Codinas, had visited in and were entirely familiar with the home itself, and therefore wished to deal directly with the sellers themselves. In fact, that is what happened. The Coneses eventually bought the home without any efforts of E & S, whose assistance was unnecessary, unwelcome and specifically rejected.
The trial court was plainly correct in ruling that the sole and simple act of telling the eventual purchasers that the piece of property was for salebecause it *366 did not amount either to "producing" the Coneses as ready, willing and able purchasers of the property,[3] see Dixson v. Kattel, 311 So.2d 827 (Fla. 3d DCA 1975); cf. also East Kendall Invs., Inc. v. Bankers Real Estate Partners, ___ So.2d ___, 1999 WL 30638 (Fla. 3d DCA Case nos. 98-939 & 98-1418, opinion filed, January 27, 1999); Alcott v. Wagner & Becker, Inc., 328 So.2d 549 (Fla. 4th DCA 1976), or result in E & S's becoming a "procuring cause" of the eventual sale, see Kotler v. Morris Kroop, Inc., 354 So.2d 110 (Fla. 3d DCA 1978), cert. denied, 359 So.2d 1217 (Fla.1978)did not, as a matter of law, entitle the appellant to recover under any viable theory of broker compensability. See Stadler Commercial Real Estate Servs., Inc. v. Industrial Waste Servs., Inc., 519 So.2d 739 (Fla. 3d DCA 1988); Howard v. Boner, 385 So.2d 699 (Fla. 1st DCA 1980); Kotler, 354 So.2d at 110; Scott v. Downey, 314 So.2d 16 (Fla. 4th DCA 1975); Salter v. Knowles, 97 So.2d 138 (Fla. 2d DCA 1957). See generally Ben-Shmuel v. Wimbish Riteway, Inc., 722 So.2d 955 (Fla. 3d DCA 1998). Compare Alcott, 328 So.2d at 549 (fact question as to recoverability of commission by broker on exclusive listing agreement). The present situation is very like a hypothetical one in which a broker merely tells a customer that he has seen a "For Sale" sign in front of a particular piece of property. Surely there could be no claim for compensation under those indistinguishable circumstances.
Finally, the conclusion that E & S had no rights against the Codinas means also that there was nothing with which the Coneses could have tortiously interfered. See McKinney-Green, Inc. v. Davis, 606 So.2d 393 (Fla. 1st DCA 1992). Hence, the final judgments for the sellers and purchasers are both affirmed.

II.
In separate appeals, the Codinas and Coneses claim error in the trial court's denial of their applications for attorney's fees under section 768.79, Florida Statutes (1997). We find merit in that position.
Early in the litigation, the Codinas and Coneses made separate unaccepted offers of $1,000.00 and $100.00 respectively to settle the case. Despite their eventual success and thus the apparent applicability of section 768.79, Florida Statutes (1997), the trial judge denied their claims for fees on the ground that the fact that their offers of judgment stated that, if accepted, the parties would exchange general releases and E & S would voluntarily dismiss the action with prejudice rendered the offers unenforceable under Martin v. Brousseau, 564 So.2d 240 (Fla. 4th DCA 1990). We decline to follow Martin and therefore reverse.
Martin indeed holds that the offer there was invalidated by the presence of what the court characterized as impermissible "conditions" which required the execution of "a full and complete release and satisfaction, a hold harmless affidavit, and a stipulation for dismissal with prejudice." Martin, 564 So.2d at 241.
Martin is perhaps distinguishable because the present offer does not require a hold harmless agreement, which may be said to impose an additional obligation beyond those which necessarily are involved in the settlement of any case. Be that as it may, we do not agree with Martin even on its own facts. This is so because, as we have indicated, none of the documents required in that case (or this one) add or subtract anything from what would be the consequences of simply accepting the offer of settlement. Properly viewed, therefore, the dismissal and releases referred to in the offer were not "conditions" of the settlement, but rather mechanical and legally inconsequential means of effecting it. They thus should be regarded as mere surplusage, the existence of which should not affect substantial rights. We agree with Judge Glickstein's dissenting view in *367 Martin that the "tail [of] additional documents [should not] wag the dog" of the rejected offer. Martin, 564 So.2d at 241.
Because this holding renders section 768.79 facially applicable, the orders denying the applications for fees are vacated. Since the trial court did not rule on the efficacy of the offers in any other respect, including the threshold issue of whether they were made in good faith, see Fox v. McCaw Cellular Communications, ___ So.2d ___, 1998 WL 870859 (Fla. 4th DCA Case No. 97-2052, opinion filed, December 9, 1998)[23 FLW D2687]; Evans v. Piotraczk, 724 So.2d 1210 (Fla. 5th DCA 1998) [23 FLW D2725]; Pennsylvania Lumbermens Mut. Ins. Co. v. Sunrise Club, Inc., 711 So.2d 593 (Fla. 3d DCA 1998), the case is remanded for the trial court to make these determinations and for other appropriate proceedings.
Affirmed in part, reversed in part, and remanded.
NESBITT, J., concurs.
COPE, J., specially concurring.
I concur in all except the discussion of Martin v. Brousseau, 564 So.2d 240 (Fla. 4th DCA 1990). In Martin, the Fourth District considered whether it was permissible for a person who makes an offer of judgment under section 768.79, Florida Statutes, to include in the offer a requirement that the offeree "execute a full and complete release and satisfaction, a hold harmless affidavit, and a stipulation for dismissal with prejudice." Id. at 241. Because the statute and applicable rule do not provide explicitly for including such conditions, the Fourth District ruled that they were impermissible and invalidated the offer of judgment. See id.
I concur with the majority opinion that a release, dismissal with prejudice, and where applicable, a satisfaction, are all customary methods of effectuating settlement and should not be deemed to be impermissible conditions. As a matter of common sense, if the case proceeded to a trial on the merits, a final judgment would be entered disposing of the case, which would also bar relitigation of the case through the doctrine of res judicata. Thus, it is both logical and necessary in settling a case under section 768.79 that there be a dismissal with prejudice, or other appropriate final judgment. Similarly, if the litigation involved foreclosure of a mortgage, the judgment would make appropriate disposition of the mortgage. In making an offer of judgment it is necessary and appropriate to make provisions to satisfy the mortgage of record, or otherwise dispose of the mortgage lien.
It is true that if the case were tried on the merits, there would be no procedure whereby, upon entry of judgment, the parties could be required to execute releases in favor of each other. Instead, the litigants rely on the doctrine of res judicata to preclude further litigation of the same claims. Nonetheless, section 768.79 was intended to facilitate settlement, and exchange of general releases in customary form is the usual way of effectuating a negotiated settlement. I agree with the majority opinion that including a requirement to exchange releases is consistent with the purpose of the statute and should not invalidate an offer of judgment.
I disagree with the majority opinion, however, insofar as it suggests that a person making an offer of judgment could include the requirement that the offeree enter into a hold harmless agreement.[*] A hold harmless agreement is in substance a contract of indemnity. It is "[a] contractual arrangement whereby one party assumes the liability inherent in a situation, thereby relieving the other party of responsibility." Black's Law Dictionary 731 (6th ed.1990). The person making the offer of judgment would be demanding that the offeree hold the offeror harmless in the *368 event of claims by third persons who are not parties to the action. Of course, if the case were tried to conclusion, there is no procedure by which the winning party can compel the losing party to execute a hold harmless agreement.
The theory of the offer of judgment statute is to compare "apples with apples," that is, the financial terms of the offer of judgment as compared with the financial result at the end of trial. If the offeror under section 768.79 is allowed to demand a hold harmless agreement, then the offer of judgment scheme breaks down. Without knowing the value of the hold harmless agreement, the financial worth of the offer cannot be meaningfully compared with the financial result obtained in the final judgment. It is "oranges and apples."
I therefore do not think that an offer of judgment under section 768.79, Florida Statutes, can be conditioned on a requirement that the offeree enter into a hold harmless agreement, and disagree with the majority opinion on this issue. I concur in the remainder of the majority opinion.
NOTES
[1] The agreement provided, in part, that Ross would be paid "if Broker, Owner, or any other person finds a buyer ready, willing and able to purchase" [e.s.] within the listing period. See Ben-Shmuel v. Wimbish Riteway, Inc., 722 So.2d 955 (Fla. 3d DCA 1998).
[2] While E & S had no contractual relationship with the Codinas, they asserted rights allegedly arising from the provision of the agreement with Ross which permitted Ross to pay a "cooperating broker" a portion of the fees Ross earned from the Codinas. Since we hold essentially that E & S did not qualify as a "cooperating broker" entitled to obtain a commission from anyone, it is unnecessary to resolve the extensive debate between the parties in this case as to whether a broker which does so qualify may sue the sellers directly as third party beneficiaries of the exclusive listing agreement or as a "sub-agents" of that broker.
[3] See supra note 1.
[*] The offer in the Martin case actually called for a "hold harmless affidavit," 564 So.2d at 241, the details of which are not explained, but apparently means a hold harmless agreement.