842 So.2d 914 (2003)
WOOD/FAY REALTY GROUP, INC., a Florida Corporation, Appellant,
v.
NEW AQUARIUS CORPORATION, a Florida Corporation, and Stanley G. Tate, Receiver, Appellees.
New Aquarius Corporation, a Florida Corporation, Cross-appellant,
v.
Wood/Fay Realty Group, Inc., A Florida Corporation, Cross-appellee.
Nos. 3D01-523, 3D01-2132.
District Court of Appeal of Florida, Third District.
March 5, 2003.
Clarification Denied April 16, 2003.
*915 Fowler White Burnett and Steven E. Stark and June G. Hoffman and Michael N. Kreitzer, Miami, for appellant.
Levine & Finger and David J. Finger; Frank H. Alvarez, Miami, for appellees.
Before SCHWARTZ, C.J., and LEVY, and WELLS, JJ.
WELLS, J.
Real estate brokerage firm Wood-Fay Realty Group, Inc., (herein, Wood-Fay), appeals from a final judgment which determined that the firm was not entitled to a commission on the sale of a commercial property. Buyer New Aquarius Corp. *916 cross-appeals from the court's order denying the buyer attorney's fees. On the following analysis we reverse the order denying the commission, and affirm the order denying the fees.
Wood/Fay had an Exclusive Right of Sale Listing Contract on a mobile home park, the Faircloth property, from August 8, 1996 to February 28, 1997. In September of 1996, Michael Fay, representing Wood-Fay, showed a number of properties to businessman Arthur Rogow, representing New Aquarius. At the time Fay approached Rogow about the Faircloth property, Rogow was considering another mobile home park a few blocks away. Fay advised Rogow that Wood-Fay had an exclusive listing on the Faircloth property at $1.9 million. Rogow was interested in this property but not at the $1.9 million listing price. Thereafter, Clayton Mobile Home Park (CMH) contracted with Stanley Tate, the receiver for the Faircloth property, to purchase the Faircloth property. This contract contained an option to cancel which terminated on April 1, 1997.
On March 21, 1997, three weeks after the original termination date of the exclusive listing agreement, Rogow contacted receiver Tate to express an interest in purchasing the Faircloth property. Receiver Tate did not advise Wood/Fay of this contact. On March 31, CMH exercised its option to cancel, and on or about April 2, 1997, New Aquarius submitted its offer to purchase the Faircloth property. Receiver Tate accepted this offer. No commission on this contract was paid to Wood/Fay.
The brokerage firm relies on several provisions of the brokerage contract in claiming its right to a commission. First, it relies on section VI(3), which provides a commission is due:
If, within 180 days after Termination Date ("Protection Period"), Seller transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom Seller, Broker or any real estate licensee communicated regarding the Property prior to Termination Date. (Emphasis added.)
Second, it relies on sections I and V of the parties' agreement, which provide:
Upon full execution of a contract for sale and purchase of the Property, all rights and obligations of this contract will automatically extend through the date of the actual closing of the sales contract.
* * * *
In consideration of Broker's obligations, Seller agrees to:
a. Cooperate with Broker in carrying out the purpose of this Contract, including referring immediately to Broker all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.
The brokerage firm maintains that because Rogow was interested in the Faircloth property at some price and discussed it with Fay while the brokerage contract was in effect, Rogow (New Aquarius) was a "prospect," entitling Wood/Fay to a commission under section VI(3), when New Aquarius contracted to purchase the property within the 180 day "protection period."
Wood-Fay also argues that the CMH contract extended the brokerage firm's exclusive listing period as per the brokerage contract's "extension clause." Although CMH eventually opted out of the deal, Rogow contacted Tate during the extension period, thus obligating Tate to advise Wood-Fay of Rogow's interest and ultimately to pay the firm's commission.
*917 We agree with both points. Rogow was a "prospect," within the common everyday meaning of that word. See Bergman v. Bergman, 145 Fla. 10, 199 So. 920, 921 (1940)(absent any evidence that the parties intended to endow a special meaning in the terms used in an agreement, the unambiguous language is to be given a realistic interpretation based on the plain, everyday meaning conveyed by the words). Rogow had previously made an offer to purchase a mobile home property listed with Wood-Fay, was in the business of buying mobile home parks, and was considering a property just blocks from the Faircloth property. Rogow also admitted that when Fay contacted him to discuss the Faircloth property, he was interested, just not at the $1.9 million listing price. Moreover, only three weeks after the Wood-Fay listing agreement "terminated," Rogow executed a contract to purchase this property. In every respect, Rogow was a "prospect" under the Wood-Fay exclusive listing agreement.
The "procuring cause" cases cited by appellee are totally unpersuasive when considering the contractual obligations of these parties. As we observed in Ben-Shmuel v. Wimbish Riteway, Inc., 722 So.2d 955, 957 (Fla. 3d DCA 1998): "`[T]he broker's right to a commission is controlled, in the final analysis, by the provisions of the employment contract with the principal.' 15 Richard R. Powell, Powell on Real Property § 84C.05[3], at 84C-74 (1998)."
We also agree with the broker's conclusion that upon execution of the CMH contract, all rights and obligations of the listing agreement automatically extended as to all parties and not just to the parties to the receiver/CMH contract. The terms and provisions of the exclusive listing agreement are clear and unambiguous in this respect and require no interpretation or rewriting. See Fecteau v. Southeast Bank, N.A., 585 So.2d 1005, 1007 (Fla. 4th DCA 1991); Pol v. Pol, 705 So.2d 51, 53 (Fla. 3d DCA 1997)(concluding that where a contract is unambiguous, the plain meaning of the parties' language controls). Here, the trial court's limitation of this provision to the parties to the Tate/CMH contract constituted an impermissible re-writing of the parties' agreement. See Lane, Gelety, Woolsey & Centrone, P.A., Inc. v. Woolsey, 377 So.2d 743, 745 (Fla. 4th DCA 1979)("[c]ourts may not interfere with the freedom of contract or substitute their judgment for that of the parties thereto and rewrite a contract in order to relieve one of the parties from the apparent hardship of an improvident bargain").
Thus when CMH contracted with receiver Tate during the original term of the exclusive listing agreement, all of the terms of the Wood-Fay exclusive listing agreement were extended through the CMH/Tate closing date. Before that date, Rogow contacted Tate expressing an interest in the Faircloth property. Under the terms of the brokerage agreement as extended, Tate was obligated to notify Wood-Fay of this prospect so that the brokerage firm could facilitate the sale and collect its commission.
Based on the fact that Rogow was a prospect under both the contract's 180 day protection period provision (section VI(3)) and the contract's extension period provision (section I), Wood-Fay is due its commission. Finally, the above analysis makes our consideration of the issue on cross-appeal unnecessary.
Accordingly, the order denying the brokerage firm its commission is reversed and remanded. The order denying the buyer its attorney's fees is affirmed.