910 So.2d 854 (2005)
Warren Arnold DRYDEN, Appellant/Cross Appellee,
v.
Kathleen M. PEDEMONTI, Appellee/Cross Appellant.
No. 5D04-1131.
District Court of Appeal of Florida, Fifth District.
April 15, 2005.
Rehearing Denied September 19, 2005.
Thomas C. Smith of Hassell, Moorhead, Carroll, Daytona Beach, for Appellant/Cross Appellee.
Karla T. Torpy of Graham, Moletteire & Torpy, P.A., Melbourne, for Appellee/Cross Appellant.
*855 SHARP, W., J.
Dryden appeals an order of the trial court, which struck his proposal for settlement after a final judgment. He sought an award of attorney fees and costs pursuant to Florida Rule of Civil Procedure 1.442.[1] The trial court struck the proposal because it determined that the release terms required by the proposal were ambiguous and were stated with insufficient particularity. We affirm.
The settlement proposal required Pedemonti to execute a full release, which was not attached to the proposal. It summarized the terms of the release as:
[R]elease of All Claims against the Defendant and all persons legally liable for the Defendant's actions in connection with the incident upon which the above styled cause of action is based, including the provision under which the Releasor shall indemnify and hold harmless their Releasees as to any and all liens and subrogated interests of any third party by virtue of any services or benefits provided by the Releasor, including, but not limited to, hospital liens, doctor's liens, worker's compensation liens, CHAMPUS liens, and any other liens....
At the oral argument in this case, the attorneys for the appellant, Dryden, and the appellee, Pedemonti, were asked whether the release clause language contained in the proposed settlement would potentially extinguish Pedemonti's first party PIP and health insurance claims. Dryden's attorney said it clearly would not and Pedemonti's attorney said it clearly would or could.
Who is correct on this issue? The "law" is not clear, in our view. Thus, pursuant to Nichols v. State Farm Mut., 851 So.2d 742 (Fla. 5th DCA 2003), rev. granted, No. SC03-1483 (Fla. Aug. 27, 2003) and No. SC03-1653 (Fla. Sept. 11, 2003), the proposal was invalid. The burden of clarifying the intent or extent of a settlement proposal cannot be placed on the party to whom the proposal is made.
In Nichols, this court held that a proposal for settlement was ambiguous, and thus ineffective under Florida Rule of Civil Procedure 1.442(c)(2)(C) and (D) because the general release requested potentially could have required the plaintiff-insured to give up her first party insurance claim for uninsured motorist coverage against the defendant-insurance company. In that case, the plaintiff-insured sued her insurance carrier under her personal injury protection clause for failure to pay her PIP claim and her uninsured motorist claim was not involved, although it was a potential additional claim. The general release language stated the insured would release all "claims, causes of actions, [etc.] ... that have accrued through the date" on which the release was signed.
The attorney for the insurance company who sent the proposal for settlement argued that he did not know of the potential uninsured motorist claim and that he did not intend that the general release encompass that cause of action. In addition, counsel testified that had the insured's counsel called him, he would have clarified the intent. This court cautioned in footnote 3, that when a general release is sought, care should be taken to insure it does not extinguish claims that are extrinsic to the litigation. 851 So.2d at 746. In *856 order to qualify under the rule, the terms of the proposal must be devoid of ambiguity, patent or latent, and not require any clarification or later judicial interpretation.
The dissent relies on three cases for the proposition that the release language in this case would not release Pedemonti's PIP or health insurance claims against first party carriers. We do not view the cases as either clear or conclusive on that point.
1. Longman v. Travelers Ins. Co., 371 So.2d 533 (Fla. 3d DCA 1979). There the court held that a general release executed by the appellant (insured) in favor of a tortfeasor did not have the "automatic" effect of barring the insured's recovery from its own first party insurance carrier for PIP benefits, as distinguished from an uninsured motorist claim. What circumstances would not make it "automatic" were not specified by the court.
2. Keith v. B.E.W. Ins. Group, Inc., 595 So.2d 178 (Fla. 2d DCA 1992). The insureds, who settled with the tortfeasor, were permitted to sue the insurance company's agent for a negligence count, unrelated to the tort claim, and to recover first party medical benefits under an insurance contract. However, the court qualified this holding by saying this ruling would not apply if the insurance carrier reserved a right of subrogation to itself by the inclusion of such a provision in the health insurance contract. The record is unclear whether appellee's insurance policies, in this case, contain such subrogation clauses.
3. Connecticut General Life Insurance v. Dyess, 569 So.2d 1293 (Fla. 5th DCA 1990), rev. denied, 581 So.2d 1307 (Fla.1991). The injured parties executed a general release in favor of the tortfeasor which provided they released "any and all claims ... for ... hospital and medical expenses ... arising ... out of the accident . . ." They then pursued medical benefit claims under a group policy against their first party insurer, Connecticut General. Connecticut General defended on the ground that the release provided that the injured parties had received full payment for medical expenses and no benefits were available pursuant to a "conditioned claim payment" provision in its policy, which purported to deny a double recovery to a claimant. Although the trial court ruled for the injured parties, this court reversed.
This court reasoned that by executing the general release, the injured party had sought to collect all expenses, including medical ones, from the tortfeasor, and accordingly, the effect of the release was to extinguish any claim to such expenses from the first part insurer. Judge Harris, writing for the court said:
After releasing their claim against the tortfeasor (thus preventing subrogation), appellees sought to recover double damages by filing a claim against their health care provider. (footnote omitted)
569 So.2d at 1295.
The release clause language in the Connecticut General case and this one are similar. In that case, the injured party released "any and all claims ... for ... hospital and medical expenses ... arising ... out of the accident. . . ." In the instant case, the release included "any subrogated interest of any third party by virtue of any services or benefits provided by [sic] the Releasor, including, but not limited to, hospital liens, doctor's, [sic] liens, worker's compensation liens, Champus liens and any other liens. . . ."
By executing the general release proposed in this case, Pedemonti could have been found by this court, pursuant to Connecticut General, to have extinguished any subrogated claim against the tortfeasor then held or later acquired by her PIP *857 carrier or health insurance carrier, thereby resulting in this court saying that he had recovered all such claims from the tortfeasor. At least, it is not as clear and as certain as it should be, in order to task a plaintiff with the duty to accept a proposal for settlement pursuant to the offer of judgment rule, or risk the sanction of paying the defendant's attorney's fees.
AFFIRMED.
GRIFFIN, J., concurs specially with opinion.
PLEUS, J., dissents with opinion.
GRIFFIN, J., concurring specially.
It seems that the intermediate appellate courts of Florida are struggling a bit to articulate how to evaluate nonmonetary terms in a proposal for settlement.
Rule 1.442(c)(2)(D) requires that "nonmonetary terms" of a proposal for settlement be stated with particularity. That nonmonetary terms should be set forth with particularity does seem sensible. Less obvious is why "nonmonetary terms" are in the proposal at all. If the nonmonetary condition is something to which the settling litigant is already entitled by operation of law, the condition is superfluous. If it is a term beyond what the settling litigant would be entitled to, it ought to invalidate the offer.
Section 768.79, Florida Statutes, appears to contemplate a straightforward and exclusively mathematical test: compare the amount of the rejected offer to the amount of the plaintiff's verdict, and apply the twenty-five percent differential. Under section 768.79, you offer an "amount," not a deal. You can't apply mathematics to "nonmonetary offers." If the defendant offers $100 but demands a confidentiality agreement as a condition to settlement, I just don't see how the statutory calculation can be made. The confidentiality agreement clearly has value but how can it be calculated and measured against the net judgment? Nonmonetary terms introduce elements into the settlement process that are not designed to be there.
The Fourth District Court of Appeal in Zalis v. M.E.J. Rich Corp., 797 So.2d 1289 (Fla. 4th DCA 2001), may have gotten closest to the nub of the problem (while sticking with the jargon of the rule) by concluding that a nonmonetary condition that the offeree agree never again to sue the defendant or "anyone associated with him" was a condition "intrinsically ... incapable of being stated with the particularity required. . . ." Id. at 1290. [emphasis supplied.] The court explained:
No reasonable estimate can be assigned to such a waiver. The defendant's offer simply did not give the plaintiff a determinable value with which to weigh his chances at trial.
Id. at 1291. The Zalis court concluded that because the condition was invalid, the offer was invalid and would not support an award of fees.
A similar notion underlay this court's decision in Nichols v. State Farm Mutual, 851 So.2d 742 (Fla. 5th DCA 2003); review granted, No. SC03-1483 (Fla. Aug. 27, 2003), review granted, No. SC03-1653 (Fla. Sept. 11, 2003). There, an express, nonmonetary condition of the offer to settle was a "general release." The problem, as the opinion notes, was that State Farm wasn't entitled to a "general release;" in exchange for the money it offered it was only entitled, by operation of law, to a release of the claims brought or required to be brought in the suit it was seeking to settle. It happened to matter in that case because State Farm was also exposed on an uninsured motorist claim, so the plaintiff made an issue of it. State Farm, in an effort to salvage its rights under the proposal, *858 claimed that it had not really meant a "general release" that was general enough to release all claims that the plaintiff had against them. The trial court in that case construed the release in accord with State Farm counsel's testimony of what his client intended and we reversed because the dichotomy in meaning made the proposal ambiguous. In our opinion, we said in footnote 3:
If the trial court had not allowed parol evidence to vary the terms of the proposed release, this would have been an appropriate case for finding that the proposal was not made in good faith. A proposal for settlement should not include conditions that, if accepted, would cause an offeree to give up a claim or right that it could not have otherwise lost in the litigation. See Martin v. Brousseau, 564 So.2d 240 (Fla. 4th DCA 1990). Otherwise, an offeror might seek to use the coercive aspects of the offer of judgment statute to exact concessions not legally available. When an offer contains as a condition a "general release," care should be taken to insure that the proposed release does not seek to extinguish claims that are extrinsic to the litigation.
Nichols, 851 So.2d at 746, n. 3.
Under Nichols, the only enforceable "nonmonetary condition" allowable under the rule is one that does not go beyond what the offeror would be entitled to by operation of law, upon settlement. In Nichols, the express nonmonetary terms of the offer went beyond the offeror's entitlement upon settlement and limiting parol evidence could not save it.
Consider the case of Connell v. Floyd, 866 So.2d 90 (Fla. 1st DCA 2004). There, Mr. Bobby Floyd, Big Bend Timber Services, Inc. and others sued Century 21 Realty and Julie Connell, a realtor/employee of the company. Century 21 and Connell counterclaimed for a commission that arose from the same facts as the main claim. Century 21 and Connell served a proposal for settlement of the main claim as to Floyd by offering to pay $1. This is proper and calculable under the statute. However, Century 21 and Connell demanded more than what they would be entitled to in a simple settlement, which is an order of dismissal. They added the condition that Bobby Floyd agree to the entry of a judgment in favor of the defendants that contained the express finding that Century 21/Connell had prevailed in defense of the claims against them. Exactly why they wanted to exact such an agreement is not clear; it may have had strategic value in prosecuting the still-pending counterclaim, as the opinion indicates, it may have some other economic benefit, or it may just have been spite. One thing is for sure  it had value. How do you calculate its value, though, and what happens when that value is subtracted from their $1 offer? How can such a proposal for settlement be calculated solely on whether the plaintiff didn't beat the $1 monetary component of the offer? I suppose there is no harm in including such a demand in a proposal; it might form the basis of an agreement between the parties. Where an "extra" nonmonetary condition is added and the offer is rejected, however, there is no basis for an award of fees. The majority in Connell rightly agreed that the condition was unenforceable, but appeared to be constrained to utilize the only express limitation in the rule: a requirement of sufficient particularity.
That brings us to this case, where the problem is not so much the clarity of the release summary as its scope. If it includes no more than what the defendant would be entitled to upon a settlement of the litigation, then the proposal ought to be enforced. If it contains more, or if it is *859 so unspecific that the scope of the release is unclear, then it cannot be enforced. I doubt that Dryden intended in this case to secure any secret strategic advantage with this release; however, the release does contain provisions that appear to go beyond what would be inherent in dismissal or release by operation of law upon settlement. The release requires Pedemonti to indemnify and hold Dryden harmless for claims made by any lienholder or subrogated interest of any third party, and the release does include not only Dryden but "all persons legally liable for the Defendant's actions in connection with the incident...." I therefore conclude that the offer will not support an award of fees.
PLEUS, J., dissenting.
The simple reality of this case is that the plaintiff rejected a perfectly clear proposal for settlement and decided to gamble with a jury trial. She lost! Upon losing, she attempted to avoid paying attorney's fees pursuant to Florida Rule of Civil Procedure 1.442 by the fallacious argument that the proposal was ambiguous. In my view, there is nothing ambiguous about the relevant conditions in the proposal. The trial judge, as well as Judges Sharp and Griffin, all agree with Pedemonti that the proposal should be stricken, but each for different reasons. I believe that all four arguments advanced against this proposal are clearly wrong and therefore I dissent.
This appeal arose from a November, 1999 auto accident between Dryden and Pedemonti. After Pedemonti sued Dryden, Dryden filed a proposal for settlement in the amount of $12,500, which stated, in pertinent part:
Relevant conditions: In consideration of this proposal for settlement, the Defendant will require the Plaintiff to execute a release of all claims against the Defendant and all persons legally liable for the Defendant's actions in connection with the incident upon which the above styled cause of action is based, including the provision under which the Releasor shall indemnify and hold harmless their Releasees as to any and all liens and subrogated interest of any third party by virtue of any services or benefits provided by the Releasor, including, but not limited to, hospital liens, doctor's liens, worker's compensation liens, CHAMPUS liens and any other liens, and the entry of a final order of dismissal with prejudice, or a satisfaction of judgment, whichever is elected by the Defendant.
(Emphasis added).
Pedemonti never accepted the proposal. She filed no motion to strike the proposal or otherwise assert objections to the proposal prior to trial. Instead, Pedemonti elected to go to trial and obtained a final judgment for $6,423.58. She lost the gamble.
After trial, Dryden sought attorney's fees and costs pursuant to Florida Rule of Civil Procedure 1.442. In response, Pedemonti filed a motion to strike the proposal for settlement, arguing that the proposal's release language was invalid because it would have extinguished her claim against her PIP carrier for cutting off her PIP benefits.
After a hearing on the matter, the trial judge struck the proposal, finding an ambiguity created by the "election of the satisfaction of judgment or a release whose language they have not seen." The problem with the judge's rationale is that the "relevant conditions" do not say "election of the satisfaction or a release." It requires a release and a satisfaction of judgment or a dismissal with prejudice. Even a correct reading of the proposal, which gives the defendant the right to elect between a satisfaction of judgment or a dismissal with prejudice, does not *860 create ambiguity. These alternatives, while technically different, have the same practical effect and should not pose an analytical problem to plaintiff's attorneys.
If the mere inclusion of a choice created ambiguity, many types of long-accepted contracts would be rendered ambiguous. For example, many homeowners and auto insurance policies give the insurer the option to "repair or replace" damage to a house or vehicle. See, e.g., Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732 (Fla.2002), which held that a "repair or replace" clause in an auto insurance policy was unambiguous. Similarly, many arbitration clauses allow one party or the other to elect arbitration and/or the rules governing the arbitration proceeding. See, e.g., Armas v. Prudential Securities, Inc., 842 So.2d 210 (Fla. 3d DCA 2003), which involved a contract that allowed the client to elect one of two sets of arbitration procedures. Thus, the mere inclusion of an election, or choice, in the proposal for settlement, did not create an ambiguity. By failing to mention this argument, Judges Sharp and Griffin apparently concede this point.
Instead, Judge Sharp's opinion appears to give credence to Pedemonti's argument below and at oral argument that the release language "would or could" extinguish her first party PIP and health insurance claims. Just because a party asserts that a provision is ambiguous does not make it so. Where the terms of a proposal under Rule 1.442 are clear and unambiguous, courts cannot indulge in construction or interpretation of its plain meaning. BMW of N. Am., Inc. v. Krathen, 471 So.2d 585, 587 (Fla. 4th DCA 1985). "Further where a contract is silent as to a particular matter, courts should not, under the guise of construction, impose on parties contractual rights and duties which they themselves omitted." Id.
A plain reading of the release language reveals nothing that could be construed as a release of Pedemonti's first party PIP or health insurance claims. The language clearly states that Pedemonti will release "the Defendant and all persons legally liable for the Defendant's actions. . . ." So far, this language plainly releases third party claims, not first party claims.
The proposal continues on with the second requirement which requires Pedemonti to "indemnify and hold harmless their Releasees as to any and all liens and subrogated interests of any third party by virtue of any services or benefits provided by the Releasor, including, but not limited to, hospital liens, doctor's liens, worker's compensation liens, CHAMPUS liens, and any other liens. . . ." This provision is equally clear. It is not the same as the release requirement but a separate relevant condition. An indemnity and hold harmless requirement does not extinguish Pedemonti's first party PIP or health insurance claims. Rather, it requires Pedemonti to indemnify the defendant in the case of any liens or subrogated interests associated with her third party claim.
Prior Florida decisions have rightly rejected Pedemonti's position, holding that the release of a tortfeasor does not extinguish first party PIP or health insurance claims. In Longman v. Travelers Ins. Co., 371 So.2d 533 (Fla. 3d DCA 1979), the court held that "under Florida law the release of a party charged or chargeable with liability or responsibility does not have the effect of releasing in injured insured's carrier from paying medical expenses under the P.I.P. coverage provision." Id. at 534. The rationale of Longman and the cases discussed therein is simple. Claims against a tortfeasor and those vicariously liable for the tortfeasor depend on the tortfeasor's negligence. In contrast, first party claims against a PIP *861 carrier are payable as a matter of contract right regardless of fault. Id. at 533-34. Judge Sharp's attempt to distinguish Longman is purely semantic.
The same rationale applies to first party health insurance claims. In Keith v. B.E.W. Ins. Group, Inc., 595 So.2d 178 (Fla. 2d DCA 1992), the court held that releasing a tortfeasor does not extinguish an injured party's claims against his or her health insurer. The court explained the reason for this rule is based on the underlying distinction between casualty and health insurance; the former is triggered by negligence while the latter is payable by contractual right. Id. at 180. Thus, Pedemonti's argument that the instant proposal somehow extinguished her PIP and health insurance claims is not supported by the release language or by Florida law.
Judge Sharp's remaining argument is that the proposal is ambiguous because the release language potentially extinguishes "any subrogated claim against the tortfeasor then held or later acquired by her PIP carrier or health insurance carrier." Once again, the plain language contained in the proposal says otherwise. The release language does not extinguish liens or subrogated claims against the tortfeasor. Instead, it would have required Pedemonti to "indemnify and hold harmless" the releasees for such claims. The very terms "indemnify and hold harmless" presuppose the continued viability of a subrogation claim. Moreover, the indemnification provision is common in releases arising from auto accidents. It is something most plaintiffs' attorneys should easily understand and be accustomed to dealing with prior to settling any auto accident case.
Judge Sharp cites Connecticut General Life Ins. v. Dyess, 569 So.2d 1293 (Fla. 5th DCA 1990), in support of her position. In that case, the court found that injured parties were estopped from filing a claim against their health insurer after settling with a tortfeasor. That case is easily distinguishable. Unlike the narrowly tailored release language in the instant case, the release in Dyess covered "any and all claims . . . for . . hospital and medical expenses ... arising ... out of the accident. . . ." Judge Sharp argues that this language is similar to the language in the instant case. In fact, it is much broader and therefore not similar at all.
Judge Griffin's special concurrence takes the position that the problem with this proposal "is not so much the clarity of the release summary as its scope." The problem with her analysis is that Rule 1.442 does not limit the scope of the relevant conditions. Judge Griffin argues that nonmonetary conditions, including the indemnification and hold harmless language in the instant proposal, are invalid if they go beyond that which "the settling litigant is already entitled to by operation of law." Using the extraneous example of a confidentiality provision, Judge Griffin concludes that "[n]onmonetary terms introduce elements into the settlement process that are not designed to be there."
The instant proposal does not contain a confidentiality provision. Only two Florida cases have discussed the validity of confidentiality provisions contained in proposals for settlement. In Swartsel v. Publix Super Markets, Inc., 882 So.2d 449 (Fla. 4th DCA 2004), the court affirmed the denial of a motion for attorney's fees, not because the proposal required a "confidential settlement agreement," but because the terms of that agreement were not stated in the proposal, thus violating the particularity requirement of Rule 1.442. In Jamieson v. Kurland, 819 So.2d 267 (Fla. 2d DCA 2002), the court reversed an order granting fees based on a proposal requiring the plaintiff to execute a confidentiality *862 agreement. Once again, the court was not troubled by the inclusion of a confidentiality requirement but by the lack of particularity with which it and other requirements were stated.
In the real world, settlement and release agreements often contain confidentiality, indemnification and other non-monetary conditions. They are nothing new and should not pose a problem to intelligent practitioners. The supreme court recognized this fact when it amended Florida Rule of Civil Procedure 1.442 to provide for non-monetary conditions in proposals for settlement.
As applied to the instant case, Judge Griffin's argument about the indemnification provision was previously rejected by the Third District Court of Appeal in Earnest & Stewart, Inc. v. Codina, 732 So.2d 364 (Fla. 3d DCA 1999). In that case, the trial court denied an application for attorney's fees pursuant to a proposal for settlement, relying on Martin v. Brousseau, 564 So.2d 240 (Fla. 4th DCA 1990), which held that a proposal was invalid because it contained "impermissible conditions" requiring the execution of a "full and complete release and satisfaction, a hold harmless affidavit, and a stipulation for dismissal with prejudice." Martin, 564 So.2d at 241.
The Third District declined to follow Martin, reasoning as follows:

Martin is perhaps distinguishable because the present offer does not require a hold harmless agreement, which may be said to impose an additional obligation beyond those which necessarily are involved in the settlement of any case. Be that as it may, we do not agree with Martin even on its own facts. This is so because, as we have indicated, none of the documents required in that case (or this one) add or subtract anything from what would be the consequences of simply accepting the offer of settlement. Properly viewed, therefore, the dismissal and releases referred to in the offer were not "conditions" of the settlement, but rather mechanical and legally inconsequential means of effecting it. They thus should be regarded as mere surplusage, the existence of which should not affect substantial rights. We agree with Judge Glickstein's dissenting view in Martin that the "tail [of] additional documents [should not] wag the dog" of the rejected offer. Martin, 564 So.2d at 241.
Codina, 732 So.2d at 366-67; compare J.J.'s Mae, Inc. v. Milliken & Co., 763 So.2d 1106, 1106-07 (Fla. 4th DCA 1999) (affirming rejection of attorney's fees under old Rule 1.442 because proposal required offeree to satisfy liens but acknowledging that rule had been amended to allow for such conditions). I would follow the third district and hold that inclusion of indemnification and hold harmless language in a proposal for settlement is not an invalid condition as long as it is stated with particularity.
Judge Griffin's special concurrence limits the precedential impact of this Court's decision to this case alone. In truth, Pedemonti, the trial judge, Judge Sharp and Judge Griffin have offered four separate rationales for invalidating a clear and unambiguous proposal for settlement, but none of these positions can be considered the law in this district. What is a practitioner to make of this case then?
The better question is why should a practitioner have to fall victim to this trap in the first place? I would hold a party seeking to avoid imposition of fees and costs pursuant to a proposal for settlement should be estopped from attacking the proposal on the grounds of ambiguity or invalid conditions unless that party has raised such objections within 30 days of receiving the proposal. Compare McElroy v. Whittington, 867 So.2d 1241 (Fla. 4th DCA *863 2004) (rejecting argument that defects in proposal was waived because offeree failed to set motion to strike offer for hearing prior to trial). In the alternative, Rule 1.442 should be amended to reflect such a requirement.
I believe virtually all plaintiffs who reject proposals for settlement do so because the monetary amount offered is unacceptable, not because the proposal is ambiguous or requires the plaintiff to execute a confidentiality agreement, indemnification agreement or release. These are just convenient arguments used by plaintiffs to invalidate proposals after they have gambled with a jury and lost. If the amount of money was agreeable, but the release terms were not, a plaintiff would surely contact the offeror so that the two sides could agree upon mutually acceptable release provisions.
A system whereby an offeree can silently reject a proposal for settlement and then later cry foul after the offeror has expended time and expense in obtaining a favorable judgment, undermines the efficacy of proposals for settlement. It allows plaintiffs to take questionable cases to trial with impunity that should be settled, knowing that they may avoid the proposal following an adverse outcome. The current rule places the burden on the offeror to make offers in good faith, but places no reciprocal burden on offerees to reject such offers in good faith. Requiring offerees to timely object to proposals with sufficient particularity would encourage offerors to accommodate such concerns by filing amended proposals or risk the denial of fees and costs. Such a system has the salutary effect of ensuring the proposal for settlement as a useful tool in facilitating settlements.
NOTES
[1] In the case below, Dryden made an offer to settle the tort lawsuit filed against him by Pedemonti, the appellee and plaintiff below, for $12,500. The jury determined damages in the suit were $10,000, and the trial court set off $3,768.42 in PIP benefits Pedemonti already received. The final judgment for Pedemonti was for $6,423.58.