851 So.2d 742 (2003)
Shannon NICHOLS, Appellant,
v.
STATE FARM MUTUAL, Etc., Appellee.
No. 5D01-3851.
District Court of Appeal of Florida, Fifth District.
June 13, 2003.
Certification Denied August 11, 2003.
*744 Thomas P. Hockman, of Law Offices of Hockman, Hockman & Hockman, Winter Park, for Appellant.
Philip D. Parrish, of Philip D. Parrish, P.A., Miami, Amicus Curiae, The Academy of Florida Trial Lawyers, on behalf of Appellant.
Kenneth P. Hazouri, of Drage, de Beaubien, Knight, Simmons, Mantzaris & Neal, LLP, Orlando, for Appellee.
TORPY, J.
Appellant ("Insured") challenges an order of the county court assessing attorney's fees and costs against her in favor of Appellee ("Insurer") after she did not prevail in her claim for damages under the personal injury protection ("PIP") provision of her insurance policy. Fees were awarded under the offer of judgment statute, section 768.79, Florida Statutes (1999). Insured contends that the statute does not apply to "PIP" claims. Alternatively, Insured contends that the proposal for settlement was not valid because it did not comply with the proposal for settlement rule. The county court rejected both contentions but did certify the following issue to this court as a question of great public importance:
Are proposals for settlement served pursuant to section 768.79, Florida Statutes, and Florida Rule of Civil Procedure 1.442 in actions to recover personal injury benefits valid and enforceable or applicable to PIP suits?
We exercise our discretionary jurisdiction to answer the question and review the underlying cause. Fla. R.App. P. 9.030(b)(4)(A). We rephrase the certified question, however, as follows:
May an insurer recover attorney's fees under rule 1.442, Florida Rules of Civil Procedure, and section 768.79, Florida Statutes, in an action brought by its insured to recover under a personal injury protection policy?
We answer the question in the affirmative. However, because we agree with Insured's alternative argument  that the proposal here was not valid  we reverse the judgment of the lower court.
Insured filed a complaint in county court alleging that she suffered injuries in an automobile accident and that Insurer, with whom she had a PIP policy, failed to pay for medical treatment and expenses arising from the injuries she suffered. Insurer defended on the ground that Insured had unreasonably refused to submit to an independent medical exam, a condition precedent to the recovery of PIP benefits.
Insurer served upon Insured a proposal for settlement in the amount of $250.00. Among the conditions contained within the proposal was a requirement that Insured "execute a general release in favor of State Farm, which will be expressly limited to all claims, causes of action, etc., that have *745 accrued through the date of [Insured's] acceptance of this proposal."
The case proceeded to jury trial, and verdict was rendered in favor of Insurer. Because the judgment was of "no liability," pursuant to section 768.79(1), Florida Statutes, the trial court awarded to Insurer its reasonable attorneys fees and costs incurred since the offer was served, in an amount totalling $23,199.00.
Although thoughtful policy arguments have been raised and cogently argued by Insured and The Academy of Florida Trial Lawyers, who appeared as amicus curiae, we believe these arguments are more appropriately addressed to the Legislature. The disposition of this case turns not on what we think is the preferred policy but on what the Legislature has clearly and unambiguously stated in the offer of judgment statute wherein it provides that it applies to "any civil action for damages filed in the courts of this state." We agree with the holding, and generally agree with the reasoning, of our sister court in U.S. Security Insurance Co. v. Cahuasqui, 760 So.2d 1101 (Fla. 3d DCA 2000), Rev. Dismissed as Improvidently Granted by 796 So.2d 532 (Fla.2001), which addresses each of the points herein raised by the litigants and amicus curiae.
Turning our attention to the second issue, we conclude that the proposal here was defective in form and content under rule 1.442, Florida Rule of Civil Procedure. Rule 1.442 provides in pertinent part as follows:
(c) Form and Content of Proposal for Settlement.
(1) A proposal shall be in writing and shall identify the applicable Florida law under which it is being made.
(2) A proposal shall:
(A) name the party or parties making the proposal and the party or parties to whom the proposal is being made;
(B) identify the claim or claims the proposal is attempting to resolve;
(C) state with particularity any relevant conditions;

(D) state the total amount of the proposal and state with particularity all nonmonetary terms of the proposal;

* * *
(Emphases added).
Here, the proposal for settlement required, among other things, that Insured execute a "general release." Although the general release was not included, the proposal stated that the release would include all "claims, causes of action, etc., that have accrued through the date" on which the Insured accepted the proposal. The proffered release was not limited, however, to claims or causes of action that were brought (or that were required to have been brought) in the instant lawsuit. Because Insured also had an outstanding claim against Insurer for uninsured motorist benefits, which claim was not a part of the instant case, Insured argued the offer was not made in good faith and that acceptance of the offer would have extinguished her UM claim.[1] Insurer countered this argument by offering evidence that it did not intend to require the release of the UM claim as a condition of acceptance of the offer.[2] Insurer's counsel testified that he was unaware of the existence of the UM claim at the time he served the proposal for settlement and that had the proposal *746 for settlement been accepted, his client would not have required that the release include the UM claim. Furthermore, counsel testified that, if Insured's counsel had called him, he would have clarified his client's intent.
The trial court apparently accepted the testimony, thereby avoiding a finding of bad faith.[3] By construing the offer in this manner, however, although possibly avoiding the bad faith problem, another problem was created in that the proposal was rendered ambiguous and thereby contravened the express language of the rule and the policy behind the rule and statute.
Rules 1.442(c)(2)(C) and (D), Florida Rules of Civil Procedure, provide that relevant conditions and all nonmonetary terms of the offer be stated with particularity. The terms of any proffered release are subject to this rule. Zalis v. M.E.J. Rich Corp., 797 So.2d 1289 (Fla. 4th DCA 2001); Gulf Coast Transp., Inc. v. Padron, 782 So.2d 464 (Fla. 2d DCA 2001). This requirement of particularity is fundamental to the purpose underlying the statute and rule. A proposal for settlement is intended to end judicial labor, not create more. Lucas v. Calhoun, 813 So.2d 971 (Fla. 2d DCA 2002); Jamieson v. Kurland, 819 So.2d 267 (Fla. 2d DCA 2002) For this reason, a proposal for settlement should be as specific as possible, leaving no ambiguities so that the recipient can fully evaluate its terms and conditions. Id. at 973 (citing United Servs. Auto. Ass'n v. Behar, 752 So.2d 663, 665 (Fla. 2d DCA 2000)). Moreover, the proposal should be capable of execution without the need for further explanation or judicial interpretation. Id. The rule and statute must be strictly construed because they are in derogation of the common law. Willis Shaw Express, Inc. v. Hilyer Sod Inc., 849 So.2d 276, 2003 WL 1089304 (Fla. March 13, 2003).
Where, as here, a release is requested as a condition of the proposal, either the proposed language of the release or a summary of the substance of the release being sought should be included within the proposal to comply with the requirement that it be "particular." Fla. R. Civ. P. 1.442(c)(2)(C), (D). The terms and conditions of the proposal should be devoid of ambiguity, patent or latent. Moreover, use of overly broad release language or use of vague words like "etcetera" in proposed release language ordinarily will not satisfy the particularity requirement of the rule. See Zalis, 797 So.2d at 1290, (requirement of mutual release against any future action fails to comply with rule).
Because the intent of this release condition could not be determined without resort to clarification or judicial interpretation, we find that it was not sufficiently particular and reverse the judgment awarding attorney's fees.
We certify to the Florida Supreme Court, as a question of great public importance, however, the first question addressed in this opinion, to-wit:

*747 May an insurer recover attorney's fees under rule 1.442, Florida Rules of Civil Procedure, and section 768.79, Florida Statutes, in an action by its insured to recover under a personal injury protection policy?
REVERSED; QUESTION CERTIFIED.
GRIFFIN, J., concurs.
SAWAYA, J. concurring in part; dissenting in part, with opinion.
SAWAYA, J., concurring in part, dissenting in part.
I concur with the majority that the order awarding attorney's fees must be reversed. However, I respectfully disagree that the offer of judgment statute found in section 768.79, Florida Statutes, applies to PIP cases. In my view, application of section 768.79 to PIP cases would completely thwart and circumvent the purposes of the Florida Motor Vehicle No-Fault Law[1] (the No-Fault Act) and PIP benefits. Moreover, I believe that the Legislature never intended a suit to recover PIP benefits to be an action for damages under section 768.79. Although I concur that this issue should be certified to the Florida Supreme Court, I believe that the question certified should be rephrased as follows to reflect the true nature of a suit to recover PIP benefits and answered in the negative:
May an insurer recover attorney's fees under rule 1.442, Florida Rules of Civil Procedure, and section 768.79, Florida Statutes, in an action brought by its insured to recover personal injury protection benefits under the insurance policy issued to the insured?

Application of the Offer of Judgment Statute Would

Circumvent the Purposes of the No-Fault Law and Pip Benefits
In order to properly determine whether the offer of judgment statute found in section 768.79, Florida Statutes (2001), applies to PIP cases, it is necessary to start with the firmly established rule that "[l]egislative intent, as always, is the polestar that guides a court's inquiry under the Florida No-Fault Law...." United Auto. Ins. Co. v. Rodriguez, 808 So.2d 82, 85 (Fla.2001). In my view, application of section 768.79 to PIP cases would completely circumvent and thwart the purposes of the No-Fault Act and the specific provisions relating to PIP benefits found in section 627.736. Therefore, it is clear to me that the Legislature certainly did not intend for section 768.79 to apply to PIP cases.
The Florida Legislature enacted the No-Fault Act to "provide for medical, surgical, funeral, and disability insurance benefits without regard to fault" and to limit "the right to claim damages for pain, suffering, mental anguish, and inconvenience." § 627.731, Fla. Stat. (2001). In order to accomplish this objective, section 627.736(1) requires that every owner of a motor vehicle obtain motor vehicle liability insurance that provides "personal injury protection ... for loss sustained ... as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle...." (Emphasis added). In exchange for abrogation of the right of the injured party to sue the tortfeasor for damages for pain, suffering, mental anguish, and inconvenience, the injured party is entitled to receive protection in the form of PIP benefits, which are limited to the following: eighty percent of all reasonable medical expenses so the insured *748 will have access to necessary medical care and his or her medical providers will be assured of prompt payment; sixty percent of disability benefits so the insured and his or her family will have access to necessary funds for family support to replace the income lost as a result of any debilitating injury suffered by the insured; and certain death benefits to ensure prompt payment of necessary funeral expenses. § 627.736(1), Fla. Stat. (2001).
Because the injured insured is statutorily prohibited from recovering these costs from the tortfeasor whose wrongful conduct caused the injury or death, he or she is relegated to payment of these necessary costs from his or her insurance carrier unless the statutorily-imposed threshold of permanency is established. § 627.737, Fla. Stat. (2001). Thus, the injured insured becomes totally dependent on his or her insurance carrier for payment of these necessary costs. Shortly after the Legislature enacted the No-Fault Act in 1973, the Florida Supreme Court in Lasky v. State Farm Insurance Co., 296 So.2d 9 (Fla.1974), articulated the specific purposes of the No-Fault Act, stating that central to the legislative intent was the desire to enhance the public welfare through "an assurance that persons injured in vehicular accidents would receive some economic aid in meeting medical expenses and the like, in order not to drive them into dire financial circumstances with the possibility of swelling the public relief rolls." Id. at 16 (emphasis added). In Ivey v. Allstate Insurance Co., 774 So.2d 679 (Fla.2000), the court held that "[w]ithout a doubt, the purpose of the no-fault statutory scheme is to `provide swift and virtually automatic payment so that the injured insured may get on with his life without undue financial interruption.'" Id. at 683-84 (emphasis added) (quoting Government Employees Ins. Co. v. Gonzalez, 512 So.2d 269, 271 (Fla. 3d DCA 1987)).
The assurance of swift and virtually automatic provision of PIP benefits is accomplished through the requirements of section 627.736(4)(b), which provides that PIP insurance benefits shall be overdue if not provided within thirty days after the insurer is furnished written notice of a covered loss and of the amount of same. If the insurer allows a claim to become overdue, the insurer is subject to specific penalties, which include an award of attorney's fees to the insured.[2] I emphasize that imposition of an award of fees against the insurance carrier is a penalty for failing to provide PIP benefits in accordance with the time limitations of the No-Fault Act. The court in Ivey explained the significance of the statutory provisions that allow for awards of attorney's fees to the injured insured in achieving the purpose of the No-Fault Act:
Florida law is clear that in "any dispute" which leads to judgment against the insurer and in favor of the insured, attorney's fees shall be awarded to the insured. See §§ 627.736(8), 627.428(1); see also Dunmore, 301 So.2d at 503. That is, under PIP law, the focus is outcome-oriented. If a dispute arises between an insurer and an insured, and judgment is entered in favor of the insured, he or she is entitled to attorney's fees. It is the incorrect denial of benefits, not the presence of some sinister concept of "wrongfulness," that generates the basic *749 entitlement to the fees if such denial is incorrect. It is clear to us that the purpose of this provision is to level the playing field so that the economic power of insurance companies is not so overwhelming that injustice may be encouraged because people will not have the necessary means to seek redress in the courts.
Ivey, 774 So.2d at 684 (emphasis added). In Nationwide Mutual Fire Insurance Co. v. Pinnacle Medical, Inc., 753 So.2d 55 (Fla.2000), the court, in holding unconstitutional the requirement of mandatory arbitration and awards of attorney's fees to the prevailing party under section 627.736(5), again emphasized the importance of the provision for fees to the insured under section 627.428 by explaining:
An objective of Florida's Motor Vehicle No-Fault Law was to provide persons injured in an accident with prompt payment of benefits. [Lasky v. State Farm Ins. Co., 296 So.2d 9, 16 (Fla.1974)]. Similarly, the legislative objective of section 627.428(1), Florida Statutes, which provides for an award of attorney fees against insurers who wrongfully deny benefits, was to discourage insurance companies from contesting valid claims and to reimburse successful insureds for their attorney fees when they are compelled to sue to enforce their insurance contracts. See State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830, 833 (Fla. 1993).
Id. at 59.
There is no provision for an award of attorney's fees to the insurer in any of the provisions of the No-Fault Act and, I believe, for good reason. Such a provision would thwart the purpose of the PIP provisions of the statutory no-fault scheme by unleveling the playing field by giving the insurance companies far too much leverage over the insureds, who are dependent on the fair and speedy payment of their necessary medical bills from their insurance carrier so they will continue to have access to necessary medical care. Hence, an award of fees to the insurer under section 768.79 would circumvent the purposes of assuring swift and virtually automatic payment of benefits and, instead of discouraging insurers from contesting valid claims, it would have the effect of encouraging the contest of valid claims. Furthermore, an award of fees to the insurer under section 768.79 would completely vitiate the purpose of imposing a penalty on the insurer under section 627.428. Moreover, because section 768.79 is punitive in nature,[3] an award of fees to the insurer would actually impose a penalty on the insured. I do not believe that the Legislature intended this result in enacting the No-Fault Act or section 768.79.
I also believe that imposition of attorney's fees on the insureds pursuant to section 768.79 could totally offset the insureds' benefit awards for these essential medical costs and leave the insureds with unpaid medical bills that could potentially cause a cessation of their medical care. In addition, imposition of fees against the insureds could leave the insureds actually owing money to their insurance company. In essence, the insureds could lose the *750 benefits of the coverage for which they paid a premium and be saddled with a debt owed to their insurance company. Surely, the Legislature did not intend for such calamities to occur to insureds who were, according to the court in Lasky, given "an assurance that [they] would receive some economic aid in meeting medical expenses and the like...." Imposition of fees pursuant to section 768.79 would, in my view, constitute a breach of that assurance and could potentially place many injured insureds in "dire financial circumstances with the possibility of swelling the public relief rolls"  a circumstance the court in Lasky indicated should not occur.
Moreover, the stated purpose of the No-Fault Act is to "provide medical, surgical, funeral, and disability insurance benefits without regard to fault, and to require motor vehicle insurance securing such benefits...." § 627.731, Fla. Stat. (2001). This purpose is accomplished through the provisions of section 627.733, which require that every owner of a motor vehicle "maintain security as required by subsection (3)...." § 627.733(1), Fla. Stat. (2001). Subsection (3) provides that "[s]uch security shall be provided: (a) [b]y an insurance policy ... which provides the benefits and exemptions contained in ss. 627.730-627.7405." § 627.733(3)(a), Fla. Stat. (2001). Section 627.736 contains the provisions that specify what the security requirements are: medical, disability and death benefits. As the court explained in Reid v. State Farm Fire & Casualty Co., 352 So.2d 1172 (Fla.1977):
The provision of Section 627.733, that every owner or registrant of a motor vehicle required to be registered and licensed in the state shall maintain security, must be read in context with the rest of the Florida Automobile Reparations Reform Act. In this context, the purpose of the required security is clearly to provide financial responsibility to pay any "no-fault" personal injury protection benefits due under Section 627.736.
Id. at 1173 (emphasis added).
The point I am making is that injured insureds are provided security for the payment of their benefits. The dictionary gives the plain and ordinary meaning of the term "security": "1. Freedom from risk or danger; safety. 2. Freedom from doubt, anxiety, or fear; confidence. 3. Something that gives or assures safety." The American Heritage Dictionary 109 (2d ed.1985). Injured insureds who, according to Lasky, were given "an assurance... of economic aid" should not be subjected to the uncertainties of the offer of judgment statute, which requires the injured party to make a calculated guess at the amount of benefits a jury might award and to make another calculated guess whether the award will exceed the statutory percentage provided in the statute. Payment of the injured insureds' necessarily-incurred medical bills and continuation of their medical care is far too important to be subjected to the uncertainties of the offer of judgment statute. In my view, application of section 768.79 to PIP cases, with its inherent uncertainties and risks, has completely abrogated the security and the assurance that injured insureds were promised by the Legislature through the No-Fault Act. This is not what the Legislature intended.
I further believe that those insureds who file suit to recover their benefits in small claims court without the assistance of counsel to make this burdensome calculated guess will leave insurance companies, which are represented by attorneys, with an unfair advantage. I also believe that this will discourage many insureds from attempting to obtain the benefits for which they paid a premium, leaving the insurance *751 companies that collected their premiums with a windfall.
The Florida Supreme Court recognized that section 627.428(1) is a "one-way street offering the potential for attorneys' fees only to the insured or beneficiary." Danis Indus. Corp. v. Ground Improvement Techniques, Inc., 645 So.2d 420, 421 (Fla. 1994). Because of the imposition of fees pursuant to section 768.79, instead of traveling down an unobstructed one-way street to recovery as intended by the Legislature, many injured insureds may find themselves stuck in front of a toll booth erected and maintained by their insurance companies without sufficient funds for passage through. This certainly is not the intention of the Legislature.
Section 768.79 is part of Chapter 768, Florida Statutes, wherein the Legislature included section 768.71(3), which provides that "[i]f a provision of this part is in conflict with any other provision of the Florida Statutes, such other provision shall apply." The PIP statute found in section 627.736 specifically provides that in PIP cases, "the provisions of s. 627.428 shall apply...." § 627.736(8), Fla. Stat. (2001) (emphasis added). This provision is significant because section 627.428 would apply to PIP cases regardless of the provisions of section 627.736(8). In my view, the Legislature intended that the specific provisions of section 627.428 should apply over the general provisions of section 768.79. In other words, specifically including section 627.428 in the provisions of section 627.736(8), to the exclusion of any other statutory provision for fees, clearly indicates the Legislature's intention that section 627.428 be the exclusive authority for an award of fees in PIP cases. See, e.g., Frazier v. Metropolitan Dade County, 701 So.2d 418 (Fla. 3d DCA 1997) (holding that section 768.71(3) applied to a conflict between the wrongful death statute (the more specific statute) under which a non-negligent survivor's recovery cannot be reduced due to another survivor's negligence, and the comparative negligence statute (the more general statute), which dictates that each party's liability is limited to that party's percentage of fault, so that the comparative fault statute had to yield to the wrongful death statute).
I note that the Legislature recently amended section 627.736 by adding subsection (11), which requires that the insured provide the insurer with written notice of an intent to file a claim for benefits. Ch.2001-271, § 6, at 1759, Laws of Fla.; § 627.736(11)(a), Fla. Stat. (2001). Section 627.736(11)(d) provides that "[t]he insurer shall not be obligated to pay any attorney's fees if the insurer pays the claim within the time prescribed by this subsection." In my view, this provision reaffirms the Legislature's intention that an award of fees to the insured be a one-way street, especially in light of the fact that the Legislature again failed to make provision for fees to the insurer.

Whether the Legislature Intended a Suit to Recover Pip Benefits

to be an "Action for Damages" Under Section 768.79.
I begin this section by re-emphasizing that "Legislative intent, as always, is the polestar that guides a court's inquiry under the No-Fault Law." Rodriguez, 808 So.2d at 85. The Legislature has clearly indicated that section 768.79 applies to "any civil action for damages." This raises the obvious issue whether the Legislature intended a suit to recover PIP benefits to be an action for damages under section 768.79. The purpose of the No-Fault Act, and especially the statutory provision for PIP benefits that replaces the common law suit for damages, as discussed in the first part of my dissent, clearly indicate to me that the Legislature never intended or *752 even considered a suit to recover PIP benefits to be an action for damages under section 768.79. Other indicators that lead me to that conclusion include the statutory rules of construction that must be applied to any interpretation of section 768.79, the plain and ordinary meaning of an "action for damages," and the language in many of the decisions rendered by Florida courts that have discussed actions to recover PIP benefits.
The courts have specifically held that because section 768.79 is in derogation of the common law and imposes a penalty, it must be strictly construed and must never be "`extended by construction.'" Hilyer Sod, 817 So.2d at 1054 (quoting Holmberg v. Dep't of Natural Res., 503 So.2d 944, 947 (Fla. 1st DCA 1987)); Schussel v. Ladd Hairdressers, Inc., 736 So.2d 776 (Fla. 4th DCA 1999). "It has long been a rule of statutory construction that statutes must be given their plain and obvious meaning and courts should assume that the legislature knew the plain and ordinary meaning of words when it chose to include them in a statute." Hankey v. Yarian, 755 So.2d 93, 96 (Fla.2000) (citations omitted).
The plain and ordinary meaning of "civil action for damages" is what I consider to be the traditional concept of a suit for damages. In Hanna v. Martin, 49 So.2d 585 (Fla.1950), the court explained what damages are and the concept of damages in our jurisprudence:
Damage may be defined to be the loss, injury or deterioration caused by negligence, design or accident of one person to another in respect to his person or property.
The fundamental principle of the law of damages is that the person injured by breach of contract or by wrongful or negligent act or omission shall have fair and just compensation commensurate with the loss sustained in consequence of the defendant's act which give [sic] rise to the action. In other words, the damages awarded should be equal to and precisely commensurate with the injury sustained.
Id. at 587 (citation omitted); see McLeod v. Continental Ins. Co., 591 So.2d 621 (Fla. 1992).[4] In McLeod, the court further explained that the injured party is entitled to damages that are "`the natural, proximate, probable or direct consequence of the act'" and that the objective of a damage award is to make the injured party whole. McLeod, 591 So.2d at 624 (quoting Douglass Fertilizers & Chem., Inc. v. McClung Landscaping, Inc., 459 So.2d 335, 336 (Fla. 5th DCA 1984)) (citation omitted); see also Hardwick Props., Inc. v. Newbern, 711 So.2d 35, 39 (Fla. 1st DCA) ("General damages are those damages which naturally and necessarily flow or result from the injuries alleged ....") (quoting Hutchison v. Tompkins, 259 So.2d 129, 132 (Fla. 1972)), review denied, 727 So.2d 908 (Fla. 1998); Scott v. Rolling Hills Place Inc., 688 So.2d 937, 940 (Fla. 5th DCA 1996) (holding that the injured party is entitled to recover any and all damages flowing from the breach that were reasonably foreseeable by the breaching party). Moreover, "[i]t is undisputed that section 768.79, Florida Statutes, applies only to actions for money damages." Burtman v. Porchester Holdings, Inc., 680 So.2d 631, 632 (Fla. 4th DCA 1996).[5] Thus, the provision "action *753 for damages" in section 768.69 applies "where the essential issue is clearly a dispute over money." Id.
Accordingly, the plain and ordinary meaning of "any civil action for damages" is an action brought by an injured party against the wrongdoer to recover compensation in the form of money damages for the full measure of the loss or injury that was naturally and proximately caused by the wrongful act in order to make the injured party whole. The term "any" means that application of section 768.79 is not limited to negligence actions, but applies to other tort actions and to actions for breach of contract. For example, in a personal injury action, the injured party may recover for pain, suffering, and mental anguish in addition to medical and disability expenses.[6] In a suit for breach of contract, the injured party is entitled to recover any and all damages flowing from the breach that were reasonably foreseeable by the breaching party. Scott. But a suit to recover PIP benefits does not seek compensation from the wrongdoer for all of the injured party's injuries that are a natural and proximate consequence of the wrongful act in order to make the injured person whole. To the contrary, the expressed purpose of the No-Fault Act is to impose "a limitation of the right to claim damages for pain, suffering, mental anguish, and inconvenience," section 627.731, and to replace the right to sue for damages "with the ability to recover uncontested benefits and an exemption from tort liability." Pinnacle Medical, 753 So.2d at 58 (citation omitted). Moreover, the benefits that an injured insured is entitled to recover in a PIP suit are limited to eighty percent of the medical and sixty percent of the disability expenses. Hence, the statute does not even allow for full recovery of these costs.
Because a PIP suit does not fall within the plain and ordinary meaning of an "action for damages" and because we must assume that the Legislature knew the plain and ordinary meaning of an "action for damages" when it enacted section 768.79, I am convinced that the Legislature never intended a PIP suit to be subject to the provisions of section 768.79.
In my view, the Legislature has always considered the essence of a PIP action to be a suit to enforce the insurance policy by determining the coverage provided thereunder so that the insured may obtain the benefits for which he or she paid a premium.[7] This is evident by the Legislature's *754 pronouncement that the purpose of PIP insurance is to "provide for medical, surgical, funeral, and disability insurance benefits...." § 627.731, Fla. Stat. (2001). Other provisions in section 627.736 support this view. Section 627.736(11)(a) provides that the insurer must provide written notice "[a]s a condition precedent to filing any action for an overdue claim for benefits under paragraph (4)(b)...." Section 627.736(4) provides that "[b]enefits due from an insurer ... shall be due and payable as loss accrues ..." and section 627.736(4)(b) provides that "[p]ersonal injury protection insurance benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same." Section 627.736(7) applies to situations where an insurer seeks to withdraw benefits covering a treating physician's care because the treatment, as opposed to the amount of the charge for that treatment, is not reasonable, necessary or related. If the insurer does cease benefits under this section and the insured files suit, the issue then becomes whether the treatment, not the charge, is necessary, reasonable or related. Is this a suit for money damages? In my view, the Legislature does not consider it as such.
Numerous decisions by the Florida courts support this view. In State Farm Fire & Casualty Co. v. Palma, 629 So.2d 830 (Fla.1993), for example, the court specifically referred to the relief that may be obtained in a PIP suit when it stated:
When an insured is compelled to sue to enforce an insurance contract because the insurance company has contested a valid claim, the relief sought is both the policy proceeds and attorney's fees pursuant to section 627.428.
....
Florida courts, including this Court, have consistently held that the purpose of section 627.428 is "to discourage the contesting of valid claims against insurance companies and to reimburse successful insureds for their attorney's fees when they are compelled to defend or sue to enforce their insurance contracts." Lexow, 602 So.2d at 531.
Palma, 629 So.2d at 832-33 (emphasis added).
Similarly, in Pinnacle Medical, the supreme court held that under the No-Fault Act, the insureds' right to sue for damages was replaced with the right to recover insurance benefits and that attorney's fees must be awarded to the insureds when they sue to enforce their insurance contracts to obtain those benefits. Id. at 58. The court stated:
As explained in Smith v. Department of Insurance, 507 So.2d 1080 (Fla.1987), this Court in Lasky found that the provision of Florida's No-Fault Law that *755 denied a plaintiff the right to sue unless certain threshold damages existed was not a violation of access to courts because the right was replaced with the ability to recover uncontested benefits and an exemption from tort liability. Id. at 1088.
....
An objective of Florida's Motor Vehicle No-Fault Law was to provide persons injured in an accident with prompt payment of benefits. Id. at 16. Similarly, the legislative objective of section 627.428(1), Florida Statutes, which provides for an award of attorney fees against insurers who wrongfully deny benefits, was to discourage insurance companies from contesting valid claims and to reimburse successful insureds for their attorney fees when they are compelled to sue to enforce their insurance contracts. See State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830, 833 (Fla. 1993).
Pinnacle Medical, 753 So.2d at 58-59 (emphasis added). As the court in Lasky explained:
Protections are afforded the accident victim by this Act in the speedy payment by his own insurer of medical costs, lost wages, etc., while foregoing the right to recover in tort for these same benefits and (in a limited category of cases) the right to recover for intangible damages to the extent covered by the required insurance (F.S. s 627.737(1), F.S.A.); furthermore, the accident victim is assured of some recovery even where he Himself is at fault. In exchange for his former right to damages for pain and suffering in the limited category of cases where such items are preempted by the act, he receives not only a prompt recovery of his major, salient out-of-pocket losses  even where he is at fault  but also an immunity from being held liable for the pain and suffering of the other parties to the accident if they should fall within this limited class where such items are not recoverable.
Lasky, 296 So.2d at 14; see also Rodriguez, 808 So.2d at 85 ("The Law, which was enacted in 1971, was intended to provide a minimum level of insurance benefits without regard to fault....").
As the court stated in Ivey, "[i]t is the incorrect denial of benefits, not the presence of some sinister concept of `wrongfulness,' that generates the basic entitlement to the fees if such denial is incorrect." Ivey, 774 So.2d at 684. Moreover, because the injured insured's right to file a suit for damages has been statutorily abrogated,[8] the insured is forced to look to his or her insurance company for coverage under the policy he or she purchased to provide these benefits. Hence, I believe that the Legislature never intended a PIP case to be a suit for damages to make the injured insured whole; rather, a PIP case is a first-party action brought by an insured against his or her insurance company to enforce the insurance policy to obtain the limited benefits that were promised to the insured in exchange for a paid premium. Pinnacle Medical; Blish v. Atlanta Cas. Co., 736 So.2d 1151 (Fla.1999); Palma; Betancourt v. U.S. Sec. Ins. Co., 823 So.2d 201 (Fla. 3d DCA 2002), review denied, No. SC02-1926, 842 So.2d 848 (Fla. Mar.4, 2003).

*756 The Decision in U.S. Security Insurance Co. v. Cahuasqui[9]
The majority relies on the decision in Cahuasqui in concluding that section 768.79 applies to PIP cases. Because the excellent dissenting opinion of Judge Fletcher discusses the reasons why the majority opinion in Cahuasqui is wrongly decided, I will provide only brief comment on that decision. First, unlike the majority in Cahuasqui, I discern major differences between PIP cases and other insurance cases where the courts have applied section 768.79. For example, uninsured motorist coverage differs significantly from PIP insurance because "[t]he uninsured motorist statute gives the insured the same cause of action against the insurer that he has against the uninsured/ underinsured third party tortfeasor for damages for bodily injury." State Farm Mut. Auto. Ins. Co. v. Kilbreath, 419 So.2d 632, 634 (Fla.1982) (citing Dewberry v. Auto-Owners Ins. Co., 363 So.2d 1077 (Fla. 1978)). Because PIP insurance is no-fault insurance that differs significantly from other forms of insurance, decisions which apply section 768.79 to those other forms of insurance do not compel application of the statute to PIP cases.
Second, I disagree with the majority in Cahuasqui that the decision in Scottsdale Insurance Co. v. DeSalvo, 748 So.2d 941 (Fla.1999), supports its ruling that section 768.79 applies to PIP cases to allow the insurer to recover fees from the insured. In essence, the court simply held that if an offer of settlement is made by the insurer to the insured and the insured does not recover more than the amount of the offer, the insured is limited to an award of fees, under section 627.428, through the date of the offer. I believe that DeSalvo recognizes that insurers have a remedy under section 627.428 that allows them to mitigate the amount of any award of fees to the insured. I certainly do not read DeSalvo to hold that the insurer is entitled to fees in the event the insured does not recover more than the amount of the offer.

Conclusion
I strongly believe that the Legislature never intended that section 768.79 apply to PIP cases because its application would completely thwart the purposes of the No-Fault Act and PIP benefits. I am also convinced that the Legislature never intended a suit to enforce a PIP policy to recover the benefits provided thereunder to be an "action for damages" under section 768.79. Hence, the certified question, as rephrased, should be answered in the negative.
NOTES
[1] Section 768.79(7)(a), Florida Statutes, gives the trial court discretion to deny attorneys fees if the proposal is not made in good faith.
[2] The UM claim was later settled for $13,000.
[3] If the trial court had not allowed parol evidence to vary the terms of the proposed release, this would have been an appropriate case for finding that the proposal was not made in good faith. A proposal for settlement should not include conditions that, if accepted, would cause an offeree to give up a claim or right that it could not have otherwise lost in the litigation. See Martin v. Brousseau, 564 So.2d 240 (Fla. 4th DCA 1990). Otherwise, an offeror might seek to use the coercive aspects of the offer of judgment statute to exact concessions not legally available. When an offer contains as a condition a "general release," care should be taken to insure that the proposed release does not seek to extinguish claims that are extrinsic to the litigation.
[1] §§ 627.730-.7405, Fla. Stat. (2001).
[2] United Auto. Ins. Co. v. Rodriguez, 808 So.2d 82, 87 (Fla.2001) ("Under the language of the Florida No-Fault Law, an insurer is subject to specific penalties once a payment becomes `overdue'; the penalties include ten percent interest and attorneys' fees."); January v. State Farm Mut. Ins. Co., 838 So.2d 604 (Fla. 5th DCA 2003).
[3] See Hilyer Sod, Inc. v. Willis Shaw Express, Inc., 817 So.2d 1050, 1054 (Fla. 1st DCA 2002) ("Moreover, the offer of judgment statute and rule should be strictly construed because the procedure is in derogation of the common law and is penal in nature."), approved, 849 So.2d 276, 2003 WL 1089304 (Fla. Mar. 13, 2003); Schussel v. Ladd Hairdressers, Inc., 736 So.2d 776, 778 (Fla. 4th DCA 1999) (noting that "section 768.79 and Florida Rule of Civil Procedure 1.442 are punitive in nature ....") (citing TGI Friday's, Inc. v. Dvorak, 663 So.2d 606, 614 (Fla.1995); Loy v. Leone, 546 So.2d 1187, 1189 (Fla. 5th DCA 1989)).
[4] McLeod was superseded by statute on other grounds. See Time Ins. Co. v. Burger, 712 So.2d 389 (Fla.1998).
[5] See also Nelson v. Marine Group of Palm Beach, Inc., 677 So.2d 998, 999 (Fla. 4th DCA 1996) (citing Coast to Coast Real Estate, Inc. v. Waterfront Props., Inc., 668 So.2d 686 (Fla. 4th DCA 1996); V.I.P. Real Estate Corp. v. Florida Executive Realty Mgmt. Corp., 650 So.2d 199 (Fla. 4th DCA 1995)). For example, in Rosado v. Bieluch, 827 So.2d 1115 (Fla. 4th DCA 2002), review denied, No. SC02-2489, 845 So.2d 892 (Fla. Apr.22, 2003), the court held that the offer of judgment statute did not apply to a forfeiture proceeding even though the rem is money. In Miller v. Hayman, 766 So.2d 1116 (Fla. 4th DCA 2000), the court held that because the offer of judgment statute is limited to actions for damages, it does not apply to a will revocation proceeding even though the underlying issue was money.
[6] In a suit for damages for personal injury, the injured party may be entitled to recover compensation not only for medical expenses, lost earnings, lost earning capacity and the spouse's loss of consortium, but also for other elements of damages such as "[a]ny bodily injury sustained by (name) and any resulting pain and suffering [[, disability or physical impairment] [, disfigurement] [, mental anguish] [[, inconvenience] [loss of capacity for the enjoyment of life] experienced in the past [or to be experienced in the future]." Fla. Std. Jury Instr. (Civ.) 6.2(a). In a suit for breach of contract, the injured party may recover for the loss of his or her anticipated profits and any other damages which flow from the breach. Scott v. Rolling Hills Place Inc., 688 So.2d 937, 940 (Fla. 5th DCA 1996) (citing Bird Lakes Dev. Corp. v. Meruelo, 626 So.2d 234, 238 (Fla. 3d DCA 1993), review denied, 637 So.2d 233 (Fla.1994)).
[7] In order to determine what the "required benefits" are that flow from the coverage provisions of a PIP insurance policy, we turn to section 627.736(1), which provides that "[e]very insurance policy complying with the security requirements of s. 627.733 shall provide personal injury protection to the named insured...." (Emphasis added). That protection is the provision for medical, disability, and death benefits so the injured insured may have access to the necessary medical care and to provide for their disability in the event they are unable to provide for themselves or their families. This protection can come in different forms. In many instances, the insured files suit to enforce the insurance policy and obtain the benefits for which he or she paid a premium. In other instances, many PIP policies contain indemnity provisions that require the insurer to indemnify the insured from liability for these necessary expenses. In these cases, the suit is clearly not a dispute about money damages but an attempt to obtain the promised protection, which is indemnity against liability. In many other instances, the insured obtains protection by assigning his or her rights under the policy to their medical care providers, who then attempt to obtain the benefits the insured was otherwise entitled to.
[8] See § 627.731, Fla. Stat. (2001) ("The purpose of ss. 627.730-627.7405 is to provide ... a limitation on the right to claim damages for pain, suffering, mental anguish, and inconvenience."); § 627.736(3), Fla. Stat. (2001) ("An injured party who is entitled to bring suit under the provisions of ss. 627.730-627.7405... shall have no right to recover any damages for which personal injury protection benefits are paid or payable.").
[9] U.S. Sec. Ins. Co. v. Cahuasqui, 760 So.2d 1101 (Fla. 3d DCA 2000).