NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


ANTHONY P. DIECIDUE,                )
                                    )
        Appellant,                  )
                                    )
v.                                  )        Case No. 2D15-1852
                                    )
PETER JAMES LEWIS, TIMOTHY          )
MICHAEL NOWAK, and ALLSTATE         )
PROPERTY AND CASUALTY               )
INSURANCE COMPANY,                  )
                                    )
        Appellee.                   )
                                    )
_____ )

Opinion filed February 10, 2017.

Appeal from the Circuit Court for
Hillsborough County; Mark Wolfe, Judge.

David M. Caldevilla, of de la Parte & Gilbert,
P.A., and J. Daniel Clark, of Clark & Martino,
P.A., Tampa, for Appellant.

Kansas R. Gooden, and Loreyn P. Raab, of
Boyd & Jenerette, P.A., Jacksonville, and
Bradley E. Powers, of Banker Lopez
Gassler, P.A., Tampa, for Appellee Allstate
Property and Casualty Insurance Company.

No appearances for Appellees Peter James
Lewis and Michael Nowak.


BADALAMENTI, Judge.

Anthony P. Diecidue appeals the trial court's award of attorneys' fees and costs to Allstate Property and Casualty Insurance Company (Allstate) pursuant to a proposal for settlement (proposal) governed by section 768.79, Florida Statutes (2012), and Florida Rule of Civil Procedure 1.442. Diecidue asserts that a release form attached to Allstate's proposal creates ambiguities within the offer itself. Specifically, Diecidue argues that the release form's inclusion of a waiver of loss of consortium claims requires Diecidue to misrepresent that he has no children eligible to file a claim for loss of consortium. After careful review and the benefit of oral argument, we reverse the order granting Allstate attorneys' fees and costs and remand for further proceedings.

On April 16, 2011, Peter Lewis lost control of a vehicle, which was owned by Michael Nowak. The vehicle veered off the road and entered a little league ballpark while games were in progress. Diecidue, a coach for one of the competing teams, ran from the pitcher's mound up to the fence surrounding the field and began yelling to warn onlookers in the bleachers, who were sitting with their backs turned to the vehicle. As the vehicle crashed through the fence surrounding the little league field, it slowed down enough for Diecidue to somehow reach through the vehicle's front driver-side window, seize the controls, and cause the vehicle to stop on the pitcher's mound. Diecidue injured his back in the process.

Diecidue initiated a lawsuit which included negligence claims against Lewis and Nowak and an uninsured motorist (UM) claim against Diecidue's insurer, Allstate. On October 5, 2012, Allstate served Diecidue with a proposal for settlement for $50,000, inclusive of attorneys' fees and costs, which Diecidue rejected.

- 2 -

The case proceeded to a jury trial, where Allstate was the primary defendant.[1] The jury found that Lewis was twenty percent negligent and Diecidue was eighty percent negligent and awarded Diecidue total damages of $18,500. Diecidue's damage award was reduced by 80 percent for his proportion of contributory negligence and then by an additional $15,000 for his collateral recovery from a personal injury protection (PIP) policy and an auto medical payments (MedPay) policy. These reductions lowered Diecidue's net verdict to $3700.

After the jury rendered its verdict, Diecidue and Allstate filed competing motions for taxation of costs. Allstate's motion also included a request for attorneys' fees based on Diecidue's rejection of Allstate's prior proposal for settlement. The trial court subsequently entered a final judgment awarding Diecidue $64,401.34 in taxable costs and $89.56 in insurance premiums, plus statutory interest.[2] The order reserved jurisdiction to award additional attorneys' fees and costs.

A hearing was conducted on Allstate's motion for taxation of costs and fees. Diecidue argued that Allstate's proposal for settlement was inconsistent with the release form attached to the proposal, which created ambiguities. Specifically, Diecidue pointed out that the release required Diecidue to falsely represent that he had no

---

[1]Lewis and Nowak were not present for trial.

[2]The majority of this cost award was not considered when calculating the necessary twenty-five percent margin in section 768.79(1) because the costs were not incurred on October 5, 2012. See White v. Steak & Ale of Fla., Inc., 816 So. 2d 546, 551 (Fla. 2002) ("[W]e conclude that the 'judgment obtained' pursuant to section 768.79 includes . . . any attorneys' fees and taxable costs that could have been included in a final judgment if such final judgment was entered on the date of the offer."). Diecidue's incurred costs on that date were only $26,853.90. After rehearing, the trial court amended Diecidue's award of costs with a slightly different interest schedule, but the sums awarded to Diecidue remained the same.

unmarried dependents able to bring a claim for loss of consortium. The trial court rejected Diecidue's arguments and entered two duplicative orders on Allstate's motion to tax costs and fees. The orders each awarded Allstate $103,744.31 in attorneys' fees and costs, which were set off against Diecidue's previous award of costs, for a net award of $35,553.41 to Allstate.

Whether a proposal for settlement complies with rule 1.442 and section 768.79 is subject to de novo review. Tran v. Anvil Iron Works, Inc., 110 So. 3d 923, 925 (Fla. 2d DCA 2013) (citing Jamieson v. Kurland, 819 So. 2d 267, 268 (Fla. 2d DCA 2002)). Rule 1.442(c)(2)(C)-(D) requires the offeror to "state with particularity any relevant conditions" of the proposal and to "state with particularity all nonmonetary terms of the proposal." "The term 'particularity' as used in rule 1.442(c) means that the offeror must provide 'specific details' of any condition or nonmonetary term." 1 Nation Tech. Corp. v. A1 Teletronics, Inc., 924 So. 2d 3, 6 (Fla. 2d DCA 2005) (quoting Swartsel v. Publix Super Mkts., Inc., 882 So. 2d 449, 453 (Fla. 4th DCA 2004)). "If ambiguity within the proposal could reasonably affect the offeree's decision, the proposal will not satisfy the particularity requirement." State Farm Mut. Auto. Ins. Co. v. Nichols, 932 So. 2d 1067, 1079 (Fla. 2006).

Rule 1.442 aims to prevent ambiguity, not breadth. Id. That is, the supreme court has instructed that courts are only to invalidate a proposal for settlement for "reasonable ambiguities" and has discouraged courts from nitpicking a proposal for inconsequential ambiguities. Anderson v. Hilton Hotels Corp., 202 So. 3d 846, 852-53 (Fla. 2016). That said, because section 768.79 and rule 1.442 are in derogation of common law, they demand strict construction and compliance. See Diamond Aircraft

- 4 -

Indus., Inc. v. Horowitch, 107 So. 3d 362, 377 (Fla. 2013). Under section 768.79, an award of attorneys' fees ultimately depends "on the difference between the amount of a rejected offer and the amount of a later judgment." TGI Friday's, Inc. v. Dvorak, 663 So. 2d 606, 612 (Fla. 1995). If a defendant's proposal for settlement is twenty-five percent greater than the judgment ultimately obtained by the plaintiff, then the defendant is entitled to an award of attorneys' fees and costs. § 768.79(1).

We hold the provision of the release form concerning waiver of loss of consortium claims to be ambiguous. The penultimate paragraph of the release reads, "To procure payment of the consideration referred to herein, I do hereby declare and represent that I have no qualifying disability and qualifying dependent(s) which would enable a claim to be made by or on behalf of any unmarried dependent, as defined by section 768.0415, Florida Statutes (2007)." (Emphasis added.)

Section 768.0415 allows unmarried dependent children to bring loss of consortium claims based in negligence. See Zorzos v. Rosen, 467 So. 2d 305, 308 (Fla. 1985) (explaining that children in Florida have no common law right to bring a loss of consortium claim). In pertinent part, section 768.0415 reads, "A person who, through negligence, causes significant permanent injury to the natural or adoptive parent of an unmarried dependent resulting in a permanent total disability shall be liable to the dependent for damages, including damages for permanent loss of services, comfort, companionship, and society."

Allstate's waiver for loss of consortium claims, when read together with section 768.0415, is ambiguous because it would amount to an outright falsehood. Pursuant to the statutory language, the term "qualifying dependent(s)" as used in the

waiver means an unmarried dependent child, either natural or adopted. § 768.0415. Because the terms of the release form demand the signatory to declare that he does not have any "qualifying dependent(s)," signing the waiver would require Diecidue to represent that he has no unmarried dependent children. In Diecidue's case, this is simply untrue—he has unmarried dependent children.

"When an offer contains as a condition a 'general release,' care should be taken to insure that the proposed release does not seek to extinguish claims that are extrinsic to the litigation." Nichols v. State Farm Mut., 851 So. 2d 742, 746 n.3 (Fla. 5th DCA 2003), approved, 932 So. 2d 1067 (Fla. 2006). Although any claims for loss of consortium brought by Diecidue's children would be derivative of Diecidue's own claims, the cause of action for loss of consortium still belongs to Diecidue's unmarried children, not Diecidue. See United Servs. Auto. Ass'n v. Behar, 752 So. 2d 663, 665 (Fla. 2d DCA 2000) (citing Orange Cnty. v. Piper, 523 So. 2d 196, 198 (Fla. 5th DCA 1988)) (explaining that a proposal for settlement which failed to specify the amounts offered to two plaintiffs would have deprived one of the plaintiffs, who had a derivative claim for loss of consortium, of control as to her own claim).

A proposal for settlement is considered ambiguous, and therefore unenforceable, if it is impossible for the offeree to meet its terms. See Gonzalez v. Claywell, 82 So. 3d 1000, 1001 (Fla. 1st DCA 2011) (citing Attorneys' Title Ins. Fund, Inc. v. Gorka, 36 So. 3d 646, 649 (Fla. 2010)). The Gonzalez case concerned a proposal for settlement from a plaintiff to a defendant in a negligence case. Id. at 1000. By the terms of his proposal, the plaintiff offered to settle the case if the defendant's auto insurer, a nonparty, tendered a settlement check to the plaintiff in excess of the

insurer's policy limits. Id. The defendant declined the proposal. Id. at 1000-01. The trial court awarded the plaintiff attorneys' fees and costs on the basis of the rejected proposal for settlement. Id. at 1001. The First District reversed, holding that the plaintiff's proposal was ambiguous because it was impossible for the defendant to meet the conditions in the proposal.

Here, it would have been impossible for Diecidue to comply with the loss-of-consortium waiver because Diecidue could not honestly represent that he had no qualifying dependents under section 768.0415. As the supreme court stated in Nichols, rule 1.442's particularity requirement "does not demand the impossible" when it comes to eliminating linguistic ambiguity in proposals for settlement. 932 So. 2d at 1079. This principle works both ways. It is just as irrational for an offeree to demand impossible standards of clarity from the offeror's proposal for settlement, as it is for an offeror to try to impose legally impossible conditions on the offeree.

We also note that the trial court entered two duplicate final judgments against Diecidue—one on April 21, 2015, and another on April 22, 2015. There is no support in the record for two separate judgments against Diecidue. Allstate concedes that the trial court inadvertently entered a duplicate judgment. Accordingly, we direct the trial court to strike the later judgment, dated April 22, 2015. See Sound Builders of St. Petersburg, Inc. v. Hanlon, 439 So. 2d 276, 276 (Fla. 2d DCA 1983).

As we have in the past, we again stress that the purpose of section 768.79 and rule 1.442 is to reduce litigation costs, not create more. See, e.g., Wolfe v. Culpepper Constructors, Inc., 104 So. 3d 1132, 1134 (Fla. 2d DCA 2012) (en banc). We are mindful that prevailing parties seeking recovery under section 768.79 have

- 7 -

expressed concerns that some litigants who initially rejected proposals for settlement and neglected to receive a favorable verdict at trial make post hoc attempts to conjure up ambiguities in proposals for settlement to get a second bite at the apple. Although we do not suggest that occurred in this case, we use this case as a vehicle to emphasize that it is better practice for an offeree to raise any ambiguities in proposals for settlement with the offeror before trial. This will increase the probability that any subsequent offers may better reflect the intent of the parties and better ensure that courts are not unnecessarily injected into disputes that can otherwise be amicably resolved.

In sum, Allstate's proposal for settlement did not comply with the particularity requirement in rule 1.442(c)(2)(D). Because a valid proposal for settlement must comply with both rule 1.442 and section 768.79, the trial court erred in awarding Allstate attorneys' fees on the basis of Allstate's proposal for settlement. See Lucas v. Calhoun, 813 So. 2d 971, 973 (Fla. 2d DCA 2002) (stating that compliance with the particularity requirements of rule 1.442 is mandatory). We reverse the trial court's award of attorneys' fees and costs to Allstate and remand for further proceedings.

Reversed; remanded with instructions to strike the judgment of April 22, 2015, and for further proceedings consistent with this opinion.


LUCAS, J., Concurs.
CASANUEVA, J., Concurs with opinion.

CASANUEVA, Concurring.

I fully concur in the majority opinion. I write to discuss a concern caused by the proposal for settlement utilized in this matter and how such a proposal for settlement can be utilized in other matters for the purpose of attaining a tactical advantage rather than for the recognized purpose of ending litigation so that scarce judicial resources may be conserved. I continue to adhere to the belief that the purpose of rule 1.442 and section 768.79 is to end litigation and not to create more. Lucas, 813 So. 2d at 973.

I will first identify the proposal for settlement at issue in this case, then review the applicable rule and statute, and conclude by suggesting a means of analysis.

The proposal for settlement issued in this matter by defendant Allstate sought to resolve the litigation by offering to pay "the total amount of Fifty Thousand and 00/100 Dollars." In exchange for this amount, Allstate was to receive "a complete release and dismissal with prejudice of all claims against Defendant."

Yet, the release attached to the proposal for settlement, when read carefully, was more than a mere release. It also contained indemnification and hold harmless provisions. The latter provision operates to expose the plaintiff to future liability. Despite its breadth, the attached release's language was clear and not ambiguous. See Nichols, 932 So. 2d at 1079 ("The rule aims to prevent ambiguity, not breadth."); Saterbo v. Markuson, 41 Fla. L. Weekly D2169 (Fla. 2d DCA Sept. 21, 2016). Therefore, it was a facially valid proposal.

Section 768.79(2) identifies four items that are to be included in an offer of judgment. Importantly, the statute requires that the offer be in writing and that it set

- 9 -

forth "its total amount." § 768.79(2)(d). The legislative focus appears to be on monetary conditions rather than nonmonetary conditions. The language of the statute, enacted by the Florida Legislature, expressly identifies a monetary calculation to determine whether fees will be awarded as a penalty for the rejection of a good faith offer. Braaksma v. Pratt, 103 So. 3d 913, 914 (Fla. 2d DCA 2012). The statute makes no express mention of nonmonetary conditions. As the statute is in derogation of our state's common law, it must be strictly construed. Kuhajda v. Borden Dairy Co. of Ala., LLC, 202 So. 3d 391, 394 (Fla. 2016).

Rule 1.442(c) requires that all offers of judgment, referred to in the rule as proposals for settlement, be in writing, and it identifies seven items that "shall" be contained in a proposal for settlement. It is in the language of the rule—not the statute—that nonmonetary conditions are referenced. This language expands the field of permissible contents that may be included in a proposal for settlement as compared to the terms required for an offer of judgment authorized by statute. Whether such an expansion is permissible—or not—is beyond the scope of this concurrence and is not preserved by a trial court ruling.

While subsection (c)(2)(D) of the rule has language similar to its statutory counterpart, requiring that a proposal "state the total amount of the proposal," the rule goes beyond the express scope of the statute. In addition to monetary conditions, the rule requires a proposal to "state with particularity any relevant conditions" and to "state with particularity all nonmonetary terms of the proposal." Fla. R. Civ. P. 1.442(c)(2)(C)-(D). It is these latter provisions referencing nonmonetary conditions without limitation that authorized the inclusion, in this case and others, of additional terms such as hold

harmless and indemnification provisions.  These additional terms and others like them may cause a party to reject a proposal and thereby be exposed to an assessment of attorneys' fees.

Interestingly, when parsing the language of the rule and the statute, a reader will observe the only matters permissible for the trial court's consideration in determining whether to impose a sanction award are the amounts recovered at trial as compared to the amounts offered pretrial and whether the offer was made in good faith. Neither consideration well lends itself to whether the additional nonmonetary conditions were burdensome or were outweighed by the obligations to be possibly incurred as compared to the economic benefits of the monetary amounts offered.

By permitting the inclusion of nonmonetary conditions, rule 1.442 has also had the effect of expanding the evidentiary demands on a trial court.  Case law is replete with appellate decisions discussing whether a release was standard in the private sector and whether the terms of the proposed release were standard.  See, e.g., Michele K. Feinzig, P.A. v. Deehl & Carlson, P.A., 176 So. 3d 305, 309-310 (Fla. 3d DCA 2015) (discussing what is "standard in release language"); Jessla Constr. Corp. v. Miami-Dade Cty. Sch. Bd., 48 So. 3d 127, 130-31 (Fla. 3d DCA 2010) (stating language was "typical" of that contained in many general releases); Ledesma v. Iglesias, 975 So. 2d 1240, 1243 (Fla. 4th DCA 2008) (same); Bd. of Trs. of Fla. Atl. Univ. v. Bowman, 853 So. 2d 507, 510 (Fla. 4th DCA 2003) ("The inclusion of agents, employees, etc. is simply standard language in a general release that should be considered unambiguous and should not invalidate the proposal.").

- 11 -

Respectfully, I suggest the decision-making model should be altered to further the avowed purpose of the statute: to end litigation. To that end, the starting point of the analysis should be framed by the parties' operative pleadings. If the nonmonetary conditions are not otherwise available in any party's prayer for relief, they cannot be imposed as nonmonetary conditions of an offer of judgment. The exception to this rule is that a voluntary dismissal would be available to bring the litigation to a conclusion. In this manner, neither the trial court nor the appellate court would be required to go outside the instant case to identify and apply "settlement norms." It must be recalled that the rule and statute are not mere settlement devices; they operate as a penalty and sanction provision. See Braaksma, 103 So. 3d at 914; Attorneys' Title Ins. Fund, Inc. v. Gorka, 989 So. 2d 1210, 1213 (Fla. 2d DCA 2008).

When compared to monetary conditions set forth in an offer of judgment or proposal for settlement, nonmonetary conditions are more likely to be subjected to an ambiguity analysis or an assertion of "nitpicking." By requiring that nonmonetary terms have a nexus to the pending instant litigation as described above, the likelihood of ambiguity or nitpicking is lessened if not eliminated. Furthermore, the courts that must review the offer of judgment will be operating within the parameters of the case as defined by the respective parties' pleadings, as well as within known jurisprudence. For example, to terminate the instant litigation, a party would require a pleading that operates to dismiss all claims with prejudice. Nothing more is required to conclude the litigation.

Certainly, should the parties desire a more expansive and extensive settlement, the option of private settlement negotiation remains. Therein the parties'

settlement considerations may resolve disposition issues by measuring present financial considerations against the potential of future financial exposure. There is no question that the exercise of private settlement negotiations offers more flexibility regarding settlement terms than does the existing statute-rule combination. There, the consideration of the benefits offered by the economic terms of the settlement are more likely to result in a settlement than would the sanction operation of the existing statute-rule combination.

And it should be recognized that difficulties are created when the judiciary looks to import the norms of settlement discussion into a jurisprudence flowing from the operation of a sanction-driven statute-rule combination.

The importation of standards existent in private settlement discussions plays, in my view, no part in the analysis of the operation of Florida's offer of judgment statute-rule combination. Importantly, the use of nonmonetary conditions, such as a release that is more than a release, creates an ability to stack conditions so that the likelihood of rejection is correspondingly increased. But the rejection resulting from the proposal still permits the offering party to maintain the leverage of later sanctions. Where the legislature sought a straightforward proposal based upon the acceptance or rejection of a monetary amount, the allowance of nonmonetary conditions otherwise unavailable through the pleadings alters the dynamics envisioned by the legislature. Using the facts here, Mr. Diecidue's rejection could be based on a reluctance to acquiesce to the potential liability exposure created by the terms of the "general release." Others in a similar situation might well reach an identical conclusion. The additional terms likely operate to discourage rather than encourage settlement.

It is my view that if the offer of judgment seeks to impose a nonmonetary condition that has no nexus to the litigation's prayer or prayers for relief, such an offer of judgment does not comply with the statute and cannot support a sanction award.